Noah D. Lebowitz [SBN 194982]
DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, California  94104
Telephone: (415) 433-0333
Facsimile: (415) 449-6556
E-mail:  noah@dplolaw.com

Attorneys for Plaintiff
LINDA ELLIS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA ELLIS,<br><br>    Plaintiff,<br><br>v.<br><br>SAN FRANCISCO STATE UNIVERSITY, and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT**<br><br>1. Disability Discrimination (42 USC § 12112);<br>2. Retaliation (42 USC § 12203);<br>3. Declaratory Relief;<br>4. Disability Discrimination – Termination of Employment (Cal. Gov. Code § 12940(a))<br>5. Unlawful Medical Examination (Cal. Gov. Code § 12940(f))<br>6. Retaliation (Cal. Gov. Code § 12940(h))<br>7. Failure To Prevent Discrimination & Retaliation (Cal. Gov. Code § 12940(k))<br><br>**JURY TRIAL DEMANDED** |

## PARTIES

1. Plaintiff Linda Ellis ("Plaintiff" or "Ellis") is an individual who resides in the City of San Francisco, State of California.

2. Defendant San Francisco State University ("SFSU" or "Defendant") is a public institution, part of the California State University system, located in the City of San Francisco, State of California.

3. Plaintiff is informed and believes and thereon alleges that each of the Defendants named herein has at all times relevant to this action been the officer, agent, employee and/or representative of the remaining Defendants and has acted within the course and scope of such agency and employment, and with the permission and consent of the co-Defendant.

## JURISDICTION

4. Jurisdiction is proper under 42 USC §§ 1331 and 1337.

## VENUE

5. Venue is proper in the Northern District of California, San Francisco or Oakland Division as events forming the claims described below took place within the City and County of San Francisco.

## FACTUAL ALLEGATIONS

6. Ellis was hired by SFSU as Assistant Professor and Director of Masters Program in Museum Studies beginning in August 1987.

7. In approximately 1998, Ellis received the title Full Professor.

8. In approximately June 2002 Paul Sherwin was hired as Dean of the College of Humanities at SFSU.

9. In approximately August 2002 Edward Luby was hired as Assistant Professor in the Museum Studies Program at SFSU.

10. Over the years, Ellis developed structural damage to her knees and a pinched nerve in her back (between L2 and L3 vertebrae). These impairments developed as a result of the physical activity required during archaeological excavation and survey projects on which she worked.

11. As a result of these impairments, Ellis often used a cane or walking stick. Over the years, Dean Sherwin made derogatory and insulting comments to Ellis about her impairments and use of a cane. Ellis made it known to Dean Sherwin that she did not welcome such comments, but he continued with them nonetheless.

12. In June 2010, Ellis was diagnosed with a brain tumor. The brain tumor was stage II atypical and developed as a result of exposure to Cesium-137 from the Chernobyl nuclear disaster while working on an archaeological dig in Romania in 1986.

13. Ellis underwent surgery on or about June 10, 2010 to remove the brain tumor.

14. As a result of the tumor and surgical procedure to remove the tumor, Ellis developed disabilities including Hemianopia and mobility impairments.

15. Hemianopia is a vision impairment characterized by the loss of a portion of the visual field on the peripheral side of either eye.

16. Ellis returned to her teaching position in the Fall 2010 semester.

17. During the time Ellis returned to work after her surgery, Dean Sherwin continued to make inappropriate jokes and spoke sarcastically about Ellis' mobility impairment. Even though Ellis made clear to Dean Sherwin that such comments were inappropriate, he continued to engage in such conduct.

18. For the Spring semester 2011, Ellis drew on her sick time to work an 80% schedule.

19. After the Spring 2011 semester, Dean Sherwin forced Ellis to step down as Director of the Museum Studies Program. Luby then became the Director.

20. Over the next three years, Luby engaged in a pattern of behavior designed to belittle, shun, and marginalize Ellis.

- 3 -
COMPLAINT & DEMAND FOR JURY TRIAL

21. In early June 2011, Ellis registered with the Disability Programs and Resource Center (DPRC) at SFSU. She registered with DPRC to get assistance related to her Hemianopia.

22. On October 20, 2011, Ellis met with Associate Vice President Gene Chelberg to discuss what she felt was disability discrimination by Dean Sherwin. Vice President Chelberg agreed with Ellis and told her that he believed Dean Sherwin's conduct was a violation of the Americans with Disabilities Act.

23. Ellis took a sabbatical for the Spring semester 2012. Ellis used her sabbatical to conduct research for an upcoming book.

24. In July 2013 SFSU underwent its periodic (*i.e.*, every six to eight years) university-wide Academic Program Review process. As part of this process, each department or program is required to submit a "self-study."

25. Luby informed Ellis of the self-study and asked for her input on a 24-hour deadline over the July 4 holiday weekend.

26. In mid-November 2013, Ellis first saw the results of the self-study for the Museum Studies Program. In reading that self-study, Ellis discovered that her teaching and museum work were misrepresented. Ellis wrote a rebuttal to the self-review. She submitted that rebuttal to Dean Sherwin, Associate Dean Susan Shimanoff, and the two external reviewers.

27. In the first part of 2014, SFSU was looking to hire a new professor in the Museum Studies Program. Between January and May 2014, Luby took steps to exclude Ellis from participating in the hiring process. For instance, he sent relevant emails to an email address he knew Ellis did not use – an email address different from the one with which he had been communicating with Ellis for years.

28. In April 2014, Dean Sherwin removed Ellis from the search committee for the new faculty position.

29. In that same month, Luby attempted to shut down Ellis' museum exhibit designed for children with autism and Asperger's Syndrome. Luby denied Ellis access to museum volunteers and students for help to monitor the exhibit during the museum's open hours.

30. On May 20, 2014, SFSU Director of Faculty & Staff Relations Bryan Kauffman sent Ellis a letter advising her that she was being placed on "paid Temporary Suspension . . . pending a Fitness for Duty Independent Medical Evaluation."

31. SFSU's stated reason for requiring Ellis to attend the "Fitness for Duty Independent Medical Evaluation" was "due to the disruption of programs and/or operations of the University." No other information was provided in that letter as to the basis or justification for the exam.

32. The May 20 notice letter further informed Ellis she was prohibited from coming onto SFSU campus without prior approval from Kauffman. Failure to comply with this prerequisite would result in removal by campus police.

33. On that same day, Kauffman sent another letter to Ellis. This letter stated it was "providing [Ellis] with a report summarizing the strong and compelling evidence which is the basis for the decision to invoke the temporary suspension." This letter was the only information ever provided to Ellis regarding the basis for SFSU's decision to require her to attend the fitness-for-duty examination.

34. On May 22, SFSU Manager in Labor & Employee Relations, Diane Rosenfeld, sent Ellis a letter informing her that SFSU had made an appointment with Dr. Elliot Henderson on May 30, 2014 for her "Fitness for Duty Independent Medical Evaluation."

35. The May 22 letter did not identify what type of medicine Dr. Henderson practiced.

36. The May 22 letter did not describe the type of inquiry to be engaged in by Dr. Henderson.

37. The May 22 letter did not describe how the evaluation by Dr. Henderson would be job-related.

38. On May 28, Ellis wrote a letter to Kauffman entitled "Rebuttal to required 'medical examination' & rebuttal to specific accusations."

39. In her May 28 letter, Ellis notified Kauffman that she "cannot undergo the medical examination scheduled for this Friday because there exist serious flaws and omissions in your request." She objected to the medical examination as a violation of her civil rights.

40. In her May 28 letter, Ellis first described how she had researched Dr. Henderson – the designated examiner. She learned through her research that Dr. Henderson is a psychologist. As she wrote: "Despite the fact that SFSU has never told me what type of examination I am to take, my own research has led to my discovery that it is a psychological exam."

41. Ellis then posed a question to Kauffman: "exactly how is this psychologist supposed to analyze whether or not I am capable of performing my job duties as a professor and museum curator?" And: "Moreover, what information will I be required to provide or release to the psychologist?"

42. In her May 28 letter, Ellis indicated her willingness to have her treating physicians "answer any specific questions the university has about [her] abilities."

43. Ellis then asked SFSU to provide the following information:

　　(a) Copies of all documents "which initiated, describe, and refer to this work action"; and

　　(b) "Specific job-related accusations, with dates and signatures of parties bringing forth these accusations."

44. The remainder of Ellis' May 28 letter provided detailed factual rebuttals to the reasons articulated by Kauffman in his May 20 letter setting forth SFSU's purported justifications for its decision to temporarily suspend Ellis and require her to undergo the medical examination.

45. Ellis continued her May 28 letter by describing the harm being done to her by the access restrictions imposed by SFSU. In particular, SFSU was denying her access to materials to complete the evaluation and grading of students for one of her classes and was interfering with her ability to fulfill her obligations under her book publishing contract.

///

///

46. Ellis concluded her May 28 letter with the following:

> You state that I can get permission from you when I want to come to campus; however, I know that this entails being watched by University Police for the entire time that I am on campus and being escorted off campus by University Police. Did [Dean] Sherwin, [Associate Dean] Shimanoff, and Luby ever take into consideration how our continuing and new students would react if they see one of their professors being watched and escorted off campus by University police? If I were one of those students observing this police action, I would transfer to another university.

47. On June 3, Kauffman responded to Ellis' May 28 letter. In the email transmitting his letter, Kaufmann wrote: "You will note another fitness for duty evaluation has been scheduled for you. This is a direct work instruction by an appropriate University Administrator. Failure to report to this appointment and cooperate will be viewed as an act of insubordination and subject to disciplinary action."

48. Kauffman's June 3 letter (attached to his email of that date) did not respond to either of the questions posed by Ellis, as described above in Paragraph 43 (a) and (b). The letter advised: "Failure to comply with this instruction will result in disciplinary action against you."

49. Later that day, Ellis responded to Kauffman's letter. In her letter, Ellis wrote: "The university has not provided any facts to describe why it believes an unlimited, psychological examination is being required. Neither has SFSU named and described any of the tests or evaluations that will be administered during this psychological exam. [¶] Therefore, SFSU is in violation of my civil rights by forcing me to undergo an unlimited, psychological examination without proper justification."

50. Kauffman replied via e-mail: "You are still required to attend the evaluation. You have been provided all the information that is required of the University."

51. Ellis did not attend the second scheduled examination.

52. On June 17, Ellis wrote an e-mail to Kauffman detailing the harm being caused by SFSU's insistence on continuing her temporary suspension and administrative leave and requiring her to attend the medical examination. Among other things, Ellis wrote: "Especially

- 7 -
COMPLAINT & DEMAND FOR JURY TRIAL

hard-hit are families with autistic children and children with Asperger's Syndrome – whom I promised access to the [museum] exhibit during the summer through extensive 'help networks' for parents desperately needing educational enrichment programs for their children. (Most parent of autistic children cannot just 'drop in' to a public venue, such as a museum, because of severe behavioral issues. However, I have provided a safe, autistic-friendly environment in our University Museum.)"

53. Ellis concluded her June 17 e-mail by asking Kauffman to rescind the administrative leave, retract the requirement for the fitness-for-duty exam, and to restore her full access to the University.

54. Kauffman replied on that same date, refusing her requests. He specifically stated that Ellis' status with the university would not change until she was "found fit for duty."

55. On June 27, SFSU Provost and Vice President of Academic Affairs Sue V. Rosser sent Ellis a formal Notice of Intent to impose disciplinary action against Ellis for her refusal to attend the medical examination. The discipline to be imposed was a three day suspension.

56. The Notice of Intent acknowledged that Ellis refused to attend the evaluation, "claiming a violation of [her] civil rights. . ."

57. Under the heading "Reasons for Discipline" in the June 27 Notice of Intent Provost Rosser wrote: "The California Code of Regulations states that an employee may be required to submit to an examination to evaluate whether the employee is able to perform the duties of the position."

58. On July 2, Kauffman wrote Ellis advising her that the university had set up a third appointment with Dr. Henderson for a fitness-for-duty examination. Kauffman again advised: "Failure to comply with this instruction will result in disciplinary action against you."

59. On July 3, Ellis advised SFSU that she would not attend the third appointment for medical examination, explaining "[T]he demand that I attend this exam continues to be a violation of my civil rights; therefore, I am declining to attend. . ."

60. That same day, Kauffman sent the following reply via e-mail: "This exam is not optional. The University absolutely has he [*sic*] right to require you to attend this appointment.

- 8 -
COMPLAINT & DEMAND FOR JURY TRIAL

We are not obligated to a sew [*sic*] questions to your satisfaction. The mental health provider conducting the examination will utilize the tests necessary in his professional judgment. [¶] Failure to attend this appointment will result in further discipline, up to and including termination."

61. Ellis did not attend the third appointment for medical examination.

62. On August 15, Provost Rosser sent Ellis a Notice of Dismissal. In that Notice, Provost Rosser wrote: "Failure to submit to a medical examination by a physician as determined necessary by San Francisco State University is a violation of subdivision §43404 of the California Code of Regulations Title X [*sic*]. Your repeated failure to attend the Fitness for Duty evaluations, *inter alia*, amounts to unprofessional conduct and failure or refusal to perform the normal and reasonable duties of the position, as those terms are used in subdivisions (b) and (f) of the California Education Code §89535."

63. On November 21, Provost Rosser wrote Ellis a letter entitled "Final Decision Regarding Pending Disciplinary Action." In that letter, Provost Rosser wrote that she had made the final decision to terminate Ellis' employment with SFSU, effective December 2, 2014.

64. On December 9, 2014, Ellis filed her Complaint of Discrimination with the US Equal Employment Opportunity Commission (EEOC). On January 20, 2015, the EEOC transferred the file to the US Department of Justice (DOJ). On April 13, 2015, the DOJ issued Ellis her Notice of right to institute a civil action. On May 19, 2015, Ellis filed her Complaint of discrimination with the California Department of Fair Employment and Housing (DFEH). On that same date, the DFEH issued Ellis her Right-to-Sue letter. This Complaint is filed within 90-days of her Notice from the DOJ, and within one year of the Notice from the DFEH.

///
///
///
///
///
///

### FIRST CAUSE OF ACTION
### Disability Discrimination
### (42 USC § 12112)

65. Plaintiff incorporates by reference paragraphs 1 through 64 as though fully set forth herein.

66. At all times relevant to this Complaint, the Americans with Disabilities Act ("ADA") (42 USC § 12101 *et seq.*) and its implementing regulations were in full force and effect and binding on the Defendants.

67. Pursuant to 42 USC § 12112(a) it is unlawful for an employer to take an adverse employment action against a qualified individual with a disability because of that disability.

68. Pursuant to 42 USC §§ 12112(d)(1),(4), it is unlawful for an employer to subject an employee to a medical examination "unless such examination or inquiry is shown to be job related and consistent with business necessity."

69. Ellis has physical impairments that substantially limit a major life activity and/or SFSU regarded Ellis as having such impairment(s).  Ellis could adequately perform the essential functions of her job with or without accommodation.

70. As further described above, Ellis' disability was a motivating factor in the Defendant's decisions to first suspended and then terminate her.

71. Beginning in May 2014, the Defendant imposed a requirement on Ellis that she attend a medical examination as a condition of continued employment.  The Defendant did not articulate a business necessity for that exam nor did the Defendant restrict the exam to one that would be job related.  When Ellis asked for the Defendant to articulate both of these requirements, the Defendant refused.  Ellis refused to attend this examination, asserting her rights under the ADA.  Ellis' refusal to attend the medical examination was a motivating factor in the Defendant's decision to discipline and then terminate Ellis.

72. As a direct and proximate result of the Defendant's wrongful conduct, Ellis has suffered damages including, but not limited to, a loss of income and benefits, and has further suffered emotional distress and other general damages.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION
### Retaliation
### (42 USC § 12203)

73. Plaintiff incorporates by reference paragraphs 1 through 72 as though fully set forth herein.

74. At all times relevant to this Complaint, the ADA and its implementing regulations were in full force and effect and binding on the Defendant.

75. Pursuant to 42 USC § 12203, it is unlawful for an employer to retaliate against any person because such person engaged in protected activity under the ADA.

76. As described more fully above, Ellis engaged in several forms of protected activity. That protected activity took the form of, *inter alia*, (a) objecting to unwelcomed comments from her supervisor regarding her disability; (b) refusing to be subjected to an unlawful medical exam; and (c) challenging the Defendant's disciplinary actions.

77. Ellis' protected activities, individually and/or as a whole, served as a motivating reason for the Defendant's decisions to discipline and then terminate Ellis.

78. As a direct and proximate result of the Defendant's wrongful conduct, Ellis has suffered damages including, but not limited to, a loss of income and benefits, and has further suffered emotional distress and other general damages.

WHEREFORE, Plaintiff prays for relief as set forth below.

## THIRD CAUSE OF ACTION
### Declaratory Relief

79. Plaintiff incorporates by reference paragraphs 1 through 78 as though fully set forth herein.

80. An actual controversy has arisen and now exists between the parties with respect to the application of Title 5, Section 43404 of the California Code of Regulations.

81. As described in Paragraphs 57 and 62, above, the Defendant contends that Section 43404 entitles it to send an employee to a medical exam any time the Defendant feels the need to determine if an employee is disabled from performing the duties of the position.

82. Ellis contends that Section 43404 is superseded by both federal law (42 USC § 12112(d)(1),(4)) and California law (Cal. Gov. Code § 12940(f)), requiring an employer prove that any medical examination of an employee both be job related and consistent with business necessity. Ellis further contends that Section 43404 sets forth a lesser standard than required by Section 12112(d)(1),(4) and Section 12940(f).

83. Section 43404 was last amended in 1984. Section 12112 was enacted by the United States Congress in 1990. Section 12940(f) was enacted by the California Legislature in 2000.

84. A determination as to the respect rights and obligations of the parties is necessary and appropriate under the circumstances.

WHEREFORE, Plaintiff prays for relief as set forth below.

### FOURTH CAUSE OF ACTION
### Disability Discrimination – Termination of Employment
### (California Government Code § 12940(a).)

85. Plaintiff incorporates by reference paragraphs 1 through 84 as though fully set forth herein.

86. At all times relevant to this Complaint, FEHA and its implementing regulations were in full force and effect and binding on the Defendant.

87. Pursuant to Government Code § 12940(a), it is unlawful for an employer to discriminate against an employee because of the employee's physical disability.

88. Pursuant to Government Code §§ 12926 and 12926.1, Ellis has a physical disability, a record of physical disability, and/or was perceived as or treated as having a physical disability by SFSU.

89. Ellis is able to perform the essential functions of her position as Professor with or without reasonable accommodations for her disability.

90. Ellis' physical disability was a substantial motivating factor in SFSU's decision to terminate her.

91. As a direct and proximate result of Defendant's wrongful conduct, Ellis has suffered damages including, but not limited to, a loss of income and benefits, and has further suffered emotional distress and other general damages.

WHEREFORE, Plaintiff prays for relief as set forth below.

**FIFTH CAUSE OF ACTION**
**Unlawful Medical Examination**
**(Government Code § 12940(f))**

92. Plaintiff incorporates by reference paragraphs 1 through 91 as though fully set forth herein.

93. At all times relevant to this Complaint, the FEHA and its implementing regulations were in full force and effect.

94. Pursuant to Government Code § 12940(f), it is unlawful for an employer to require an employee to undergo a medical or psychological examination unless the employer can demonstrate that the exam is job-related and consistent with business necessity.

95. As set forth above, SFSU required Ellis to undergo a medical or psychological examination which was neither job-related nor consistent with business necessity and thereby violated Section 12940(f).

96. As a direct and proximate result of Defendant's wrongful conduct, Ellis has suffered damages including, but not limited to, a loss of income and benefits, and has further suffered emotional distress and other general damages.

WHEREFORE, Plaintiff prays for relief as set for below.

**SIXTH CAUSE OF ACTION**
**Retaliation**
**(California Government Code § 12940(h).)**

97. Plaintiff incorporates by reference paragraphs 1 through 96 as though fully set forth herein.

98. At all times relevant to this Complaint, the FEHA and its implementing regulations were in full force and effect and binding on the Defendant.

99. Pursuant to Government Code § 12940(h) it is unlawful for an employer to retaliate against an employee for engaging in protected activity.

100. As described more fully above, Ellis engaged in several forms of protected activity. That protected activity took the form of, *inter alia*, (a) objecting to unwelcomed comments regarding her disability; (b) refusing to be subjected to an unlawful medical exam; and (c) challenging the Defendant's disciplinary actions.

101. Ellis' protected activities, individually and/or as a whole, served as a substantial motivating reason for the Defendant's decisions to discipline and then terminate Ellis.

102. As a direct and proximate result of the Defendant's wrongful conduct, Ellis has suffered damages including, but not limited to, a loss of income and benefits, and has further suffered emotional distress and other general damages.

WHEREFORE, Plaintiff prays for relief as set forth below.

**SEVENTH CAUSE OF ACTION**
**Failure to Prevent Discrimination Or Retaliation**
**(California Government Code § 12940(k).)**

103. Plaintiff incorporates by reference paragraphs 1 through 102 as though fully set forth herein.

104. At all times relevant to this Complaint, the FEHA and its implementing regulations were in full force and effect and binding on the Defendant.

105. Pursuant to Government Code § 12940(k), it is unlawful for an employer to fail to prevent discrimination or retaliation from existing in the workplace.

106. In engaging in the conduct described above, the Defendant failed to engage in any reasonable steps to prevent discrimination or retaliation against Ellis.

107. Ellis is informed and believes and thereon alleges that the Defendant does not have appropriate policies, procedures, practices, guidelines, rules, and/or trainings regarding the prevention of discrimination or retaliation in the workplace, and in particular, prevention of discrimination or retaliation based upon disability.

108. As a direct and proximate result of the Defendant's wrongful conduct, Ellis has suffered damages including, but not limited to, a loss of income and benefits, and has further suffered emotional distress and other general damages.

WHEREFORE, Plaintiff prays for relief as set forth below.

## PRAYER FOR JUDGMENT

Plaintiff Linda Ellis prays for judgment as follows:

1. For special, general, and compensatory damages according to proof at trial;
2. For prejudgment and postjudgment interest;
3. For reasonable attorneys' fees, expert witness fees, and other litigation expenses pursuant to 42 USC § 12205 and California Government Code § 12965(b);
4. For a declaration that California Code of Regulations title 5 § 43404 is superseded by both Federal and State law and is no longer valid or operable nor was it valid or operable at any time relevant to this Complaint;
5. For all other relief the Court deems appropriate and just.

Dated:  May 20, 2015			DUCKWORTH PETERS LEBOWITZ OLIVIER LLP


			By:     /s/ Noah D. Lebowitz
				Noah D. Lebowitz
				Attorneys for Plaintiff Linda Ellis

## DEMAND FOR JURY TRIAL

Plaintiff Linda Ellis hereby demands a trial by jury on her First, Second, Fourth, Fifth, Sixth, and Seventh causes of action in this case.

Dated:  May 20, 2015			DUCKWORTH PETERS LEBOWITZ OLIVIER LLP


			By:     /s/ Noah D. Lebowitz
				Noah D. Lebowitz
				Attorneys for Plaintiff Linda Ellis