1  KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
2  FIEL D. TIGNO, State Bar No. 161195
Supervising Deputy Attorney General
3  MICHAEL D. GOWE
Deputy Attorney General
4  State Bar No. 226989
  1515 Clay Street, 20th Floor
5   P.O. Box 70550
  Oakland, CA  94612-0550
6   Telephone:  (510) 622-2201
  Fax:  (510) 622-2121
7   E-mail:  Michael.Gowe@doj.ca.gov
*Attorneys for Defendant Board of Trustees of the*
8  *California State University*

9              IN THE UNITED STATES DISTRICT COURT

10          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12

13

| | |
|---|---|
| 14  **LINDA ELLIS,** | C-15-02273-TEH |
| 15                                Plaintiff, | **DEFENDANT'S NOTICE OF MOTION AND  MOTION TO DISMISS UNDER FRCP 12(b)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** |
| 16               **v.** | |
| 17  **SAN FRANCISCO STATE UNIVERSITY, et al.,** | |
| 18 | Date:         July 27, 2015 |
| 19 | Time:         10:00 a.m.  Courtroom:  2 |
| 20                            Defendants. | Judge:       Hon. Thelton E. Henderson  Trial Date:  N/A  Action Filed:  May 20, 2015 |

21

22              **NOTICE OF MOTION AND MOTION**

23  **TO PLAINTIFF LINDA ELLIS AND HER ATTORNEYS:**

24        PLEASE TAKE NOTICE that on July 27, 2015, at 10:00 a.m., or as soon thereafter as the

25  matter may be heard in this Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102,

26  in Courtroom 2, Defendant Board of Trustees of the California State University (erroneously sued

27  as "San Francisco State University") will move the Court to dismiss the action pursuant to

28  Federal Rules of Civil Procedure, Rule 12(b)(6) because the plaintiff's complaint fails to state a

1

1  claim upon which relief can be granted—specifically, there is no legal obligation for an employer

2  to convince an employee that a fitness-for-duty examination is job related and of business

3  necessity before the employee is bound to submit to the exam.  Moreover, section 43404 of the

4  California Code of Regulations has not been superseded and is consistent with federal and state

5  law  The motion will be based on this notice of motion and motion, the memorandum of points

6  and authorities below, and any other pleadings and papers filed herein.

7  **INTRODUCTION AND RELIEF SOUGHT**

8  The Court should dismiss Plaintiff Linda Ellis's complaint under Federal Rules of Civil

9  Procedure, Rule 12(b)(6) because each cause of action fails to state a claim against Ellis's former

10  employer, Defendant Board of Trustees of the California State University.  Each cause of action

11  arises from the University's directive to Ellis—a professor, who had been diagnosed in 2010 with

12  a brain condition from exposure to radioactive material—that she undertake a fitness-for-duty

13  examination that is authorized under California law.  *See* Complaint, p. 2 ¶ 7, p. 3 ¶ 12.

14  According to her complaint, Ellis repeatedly refused to comply with this directive and, as a result,

15  was suspended and later terminated from employment with the University.  *See id.* at p. 9 ¶ 62.

16  Ellis contends that the directive was unlawful because it was made pursuant to section

17  43404 of the California Code of Regulations, which she claims was superseded by the Americans

18  with Disabilities Act and the Fair Employment and Housing Act.  Specifically, Ellis claims that

19  the language in section 43404 conflicts with the ADA's and FEHA's prohibitions against

20  employer-mandated medical examinations that are neither job-related nor for a business

21  necessity.

22  But, as a matter of law, section 43404 was not superseded by the ADA or the FEHA.

23  Although different language is used in the regulation as compared with those statutes, the purpose

24  of section 43404 is consistent with that of the ADA and the FEHA.  More importantly, whether

25  the University's directive is lawful does not depend on whether section 43404 is consistent with

26  the ADA and the FEHA, but on whether *the exam in question* is consistent with the ADA and the

27  FEHA.

28

2

Ellis does not claim that the University's basis for the directive is inconsistent with the ADA or the FEHA.  Nor does she claim that an exam by an independent medical provider to provide an opinion as to whether she was fit to return to work is inconsistent with the ADA or the FEHA.  Despite quoting extensively from her own communications in her complaint, she avoids quoting anything from the University's communications that explains the basis of the directive or its purpose, and simply states that the University did communicate that information to her.  *See* Complaint, p. 5 ¶ 33.  It did so, as she notes, to summarize "the strong and compelling evidence which is the basis for the decision to invoke the temporary suspension" and to order her to submit to a fitness-for-duty examination.  *See* Complaint, p. 5 ¶ 33.[1]

Ellis appears to allege that she was entitled to refuse the University's directive to undergo a fitness for duty examination if she simply disagreed that the examination was job related or was justified by business necessity.  Ellis's position is unsupported by the ADA or the FEHA because those statutes do not permit a University employee to refuse to comply with the University's directive to participate in a fitness-for-duty examination without being subject to discipline, up to termination. Fitness-for-duty examinations serve an important function in public employment that is consistent with the ADA and FEHA because such examinations enable public employers to determine whether employees are able to perform the essential functions of their job. The regulation governing the University's fitness-for-duty examination process also contains procedural safeguards to enable an employee to fully participate in the examination process:

[1] In Paragraph 33 of her complaint, Ellis refers to a May 20, 2015 letter from the University to her that explained "the basis for SFSU's decision to require her to attend the fitness-for-duty examination."  The basis referenced in the letter includes Ellis's "inappropriate and volatile conversation with the Director of Museum Studies," telling him to "shut up" in a raised voice and, in a threatening manner, "You will get yours"—as well as other "unprofessional and inappropriate interactions with staff members in the department."  Moreover, per the letter, students have reported over the past two years that she has not been able to provide them with the necessary feedback for them to submit their theses, requiring other professors to stand in to provide the feedback so that the students could graduate on schedule.  And she further was "not retaining recollection of communications that have been sent to" her, causing "the University great concern about [her] cognitive status at this time."

The letter describing the "the strong and compelling evidence which is the basis for the decision to invoke the temporary suspension" is mandated under the collective bargaining agreement for Ellis, at § 17.6
http://www.calstate.edu/LaborRel/Contracts_HTML/CFA_CONTRACT/2012-2014/.

"The employee may submit medical reports or other pertinent information to the examining physician or to the appointing power." Cal. Code Reg., title 5, div. 5, § 43404. If University employees were permitted to unilaterally refuse to participate in the fitness-for-duty process, the University would be unable to proceed with a fitness-for-duty examination despite the necessity of an examination, to the detriment of the University and its community of employees and students.

The Court should grant the University's motion here because, as a matter of law, Ellis has failed to state a claim under either the ADA or the FEHA. Moreover, as a threshold bar to her ADA claims, the University is protected against ADA liability through sovereign immunity.

## ARGUMENT

### I.   THE UNIVERSITY IS PROTECTED UNDER SOVEREIGN IMMUNITY FROM ADA LIABILITY.

Ellis's First and Second Causes of Action for disability discrimination and retaliation are both asserted under the ADA. But the University, as a state entity, is protected from ADA liability through sovereign immunity. *See Bd. of Trs. of Univ. of Ala. v. Garrett,* 531 U.S. 356, 368, 374 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."). As such, the Court should dismiss the First and Second Causes of Action as a matter of law.

### II.   ELLIS'S ENTIRE LAWSUIT FAILS AS A MATTER OF LAW.

#### A.   The University Cannot Be Held Liable under the FEHA and ADA for Requiring Ellis to Submit to a Fitness-For-Duty Examination Authorized by Law.

Ellis's disability discrimination and retaliation claims—including those based on theories of "unlawful medical examination" as well as a failure to prevent discrimination and retaliation—are each premised on the following legal argument: The ADA and the FEHA entitle Ellis to refuse to submit to the University's directive to undergo a fitness-for-duty examination—without being subject to disciplinary action—if she is not convinced that the University's fitness-for-duty examination is job related or is justified by business necessity. Plaintiff's position is untenable, as

4

1   a matter of law, because she effectively seeks to invalidate the University's regulatory authority

2   to require a fitness-for-duty examination.

3        In her complaint, Ellis's claims are based on her allegation that the University did not

4   provide her adequate justification to submit to a fitness-for-duty examination, and she was,

5   therefore, entitled to refuse unilaterally to submit to an examination.  She alleges: "The Defendant

6   did not articulate a business necessity for that exam nor did the Defendant restrict the exam to one

7   that would be job related.  When Ellis asked for the Defendant to articulate both of these

8   requirements, the Defendant refused."  Complaint, p. 10 ¶ 71:20-22; *see also* Complaint, p. 13 ¶

9   94 ("… it is unlawful for an employer to require an employee to undergo a medical or

10  psychological examination *unless the employer can demonstrate* that the exam is job-related and

11  consistent with business necessity") (emphasis added).  She justifies her refusal to follow the

12  University's directive to submit to the examination on this ground.  Complaint, p. 10 ¶ 71:22-24.

13  She complains:

14       The university has not provided any facts to describe why it believes that an unlimited,
         psychological examination is being required.  Neither has SFSU named and described
15       any of the test or evaluations that will be administered during this psychological exam.
         *Therefore, SFSU is in violation of my civil rights by forcing me to undergo an*
16       *unlimited, psychological examination without proper justification*.

17  Complaint, p. 7 ¶ 49.

18       For Ellis, then, it is a civil rights violation merely for the University to have failed to

19  convince her that a fitness-for-duty examination was job related or justified by business necessity.

20  She appears to argue that the ADA and FEHA permit her to ignore the University's directive to

21  undergo a fitness-for-duty evaluation without being subject to discipline.  But the law does not

22  impose liability on a public employer, like the University, for exercising its lawful authority to

23  require a fitness-for-duty examination, even if the employee disagrees with the reasons for the

24  examination.  Neither the ADA nor the FEHA require that the University convince an employee

25  of the necessity for a fitness-for-duty examination before requiring that employee to undergo the

26  examination.  In fact, the University is not required to engage in an "interactive process" before

27  initiating the fitness-for-duty process. *See Kao v. Univ. of San Francisco,* 229 Cal.App.4th 437,

28  450 (2014) (upholding fitness-for-duty examination of professor under the FEHA, in part,

5

because the "FEHA thus ties the interactive process to disability accommodations, not [fitness-for-duty examinations]").  Instead, Ellis was required to comply with the fitness-for-duty directive or risk disciplinary action, up to termination.

Similarly, it is not a protected activity under the FEHA or ADA for Ellis to seek additional information from the University about its justifications for a fitness-for-duty examination; nor is it a protected activity for Ellis to refuse to comply with the University's directive to submit to a fitness-for-duty examination.  *See Sullivan v. River Valley School Dist.,* 197 F.3d 804, 814 (6th Cir. 1999) (holding that plaintiff's refusal to submit to a mental and physical fitness-for-duty examination was not protected activity, and because the employer was entitled to order the fitness-for-duty examination, ordering the exams "was not itself an adverse employment action, and suspending him for refusing to comply was not retaliatory.")  The fitness-for-duty regulations contain procedural safeguards that permit an employee to provide medical information to the examiner.  Cal. Code Reg., title 5, div. 5, § 43404 ("The employee may submit medical reports or other pertinent information to the examining physician or to the appointing power.")  And, to the extent that Ellis contested the basis for the fitness-for-duty examination, which gave rise to her temporary suspension, Ellis was permitted under her collective bargaining agreement to submit a written rebuttal against the University's basis for the exam and suspension.  According to her complaint, Ellis did in fact submit a written rebuttal entitled, "Rebuttal to required 'medical examination' & rebuttal to specific accusations."  Complaint, p. 5 ¶ 3.  Although these procedural safeguards are examples of means by which she could have a voice in and contest the medical examination, Ellis was not entitled to refuse to participate in the examination.

The Court should dismiss Ellis's First, Second, Fourth, Sixth, and Seventh Causes of Action as matter of law.

**B.    The University's Directive to Ellis to Submit to a Fitness-for-Duty Examination under Section 4304 Is Lawful.**

The Court should dismiss Ellis's Third Cause of Action for declaratory relief that section 43404 was superseded by the ADA and the FEHA.  As shown below, the regulation does not

1  conflict with the ADA or the FEHA.  To the contrary, the purpose of a fitness-for-duty

2  examination authorized by section 43404 is entirely consistent with the ADA and the FEHA.

3        The California Legislature has delegated authority to the University to suspend, demote, or

4  discharge any employee "who is physically or mentally unfit for the position occupied."  Educ.

5  Code § 89536.  To ensure that any fitness assessment is grounded on a professional and objective

6  basis, the University may require the employee to submit to an independent medical examination.

7  Cal. Code Reg., title 5, div. 5, § 43404.  The only issue that an independent medical examiner is

8  authorized to determine under section 43404 is whether the employee is "physically or mentally

9  unfit for the position occupied."  *See id.* at §43404 ("Any employee … may be required to submit

10 to medical examination by a physician … designated by the appointing power to evaluate *whether*

11 *or not the employee is disabled from performing the duties of the position*.") (Emphasis added.)

12 Under this California law, the University repeatedly instructed Ellis to submit to a medical

13 examination; she repeatedly refused and was discharged for her refusal.

14       The scope and purpose of a fitness-for-duty examination under section 43404 is consistent

15 with that permitted by the ADA and the FEHA.  *See* 42 U.S.C. § 12112(d)(4)(A) (providing that

16 examinations are permissible where the examination is "job-related and consistent with business

17 necessity") and Gov't Code § 12940(f)(2) (providing that employers can require examinations

18 that are "job related and consistent with business necessity").  There can be no reasonable dispute

19 that an examination to determine only whether the employee is physically or mentally unfit for

20 her job is "job related" and of "business necessity."  *See* 29 C.F.R. § 1630.14(c) ("A covered

21 entity may make inquiries into the ability of an employee to perform job-related functions.")

22 Such an examination speaks to the core relationship between the employer and employee:

23 Whether the employee is capable of performing the work that the employer found necessary for

24 its operations and worth the cost in salary, benefits, training time, and the like to employ the

25 individual.  A finding that an employee is unfit for duty may assist the employer in taking

26 appropriate and necessary action to benefit that employee, such as engaging in interactive

27 discussions with the employee to explore reasonable accommodations if available, or applying for

28

1    voluntary disability retirement on behalf of the employee.  *See, e.g.,* Cal. Code Reg., title 5, div.

2    5, § 43400 (disabled employees eligible for disability retirement).

3        Moreover, section 43404 of the California Code of Regulations is virtually identical to

4    Government Code section 19253.5, the fitness-for-duty process that applies to other state

5    employees, in all relevant respects.  And Government Code section 19253.5 has been deemed by

6    the Ninth Circuit to be consistent with the ADA.

7        Government Code section 19253.5 provides that "an appointing power may require an

8    employee to submit to a medical examination … to evaluate the capacity of the employee *to*

9    *perform the work of his or her position*."  Gov't Code § 19253.5(a) (emphasis added).  The

10   purpose of both Government Code section 19253.5 and California Code of Regulations section

11   43404 is to authorize the public employer to require employees to undergo a fitness-for-duty

12   examination to determine whether the employee is able to perform his or her "work," which

13   necessarily includes job duties.  Significantly, Government Code section19253.5, enacted in

14   1957, has been amended multiple times since the enactment of the FEHA, without the

15   Legislature's removal of the language of section 19253.5 that permits employers to require

16   examinations to determine whether the employee is able "to perform the work of his or her

17   position."  The same state legislature that enacted the FEHA clearly intended that Government

18   Code section 19253.5 be consistent with that statute.

19       And the Ninth Circuit has held that an employer-mandated medical examination under

20   Government Code section 19253.5 did not run afoul of the ADA where the evidence showed that

21   the state worker's conduct was sufficient to support the state agency's requirement that she

22   undertake a fitness-for-duty medical examination.  *Yin v. State of Cal.,* 95 F.3d 864, 867 (9th Cir.

23   2005).  The court noted the ADA permits employers to require medical examinations that are

24   shown to be job related and consistent with business necessity.  *Id.* at 867-868.  It held that "when

25   health problems have a had a substantial and injurious impact on an employee's job performance,

26   the employer can require the employee to undergo a physical examination *designed to determine*

27   *his or her ability to work*, even if the examination might disclose whether the employee is

28   disabled or the extent of any disability."  *Id.* at 868 (emphasis added).  The Ninth Circuit held that

8

1   such an examination, to the extent it is governed by the ADA, would be covered by the ADA's

2   business necessity exception.  *Id.* at 868-869.  In so holding, the Ninth Circuit did not balk at any

3   difference in language between Government Code section 19523.5 and the ADA in 42 U.S.C. §

4   12112.  Instead, the Ninth Circuit analyzed whether the examination was designed to provide

5   information as to whether the employee can perform the work of her position, which is precisely

6   the purpose of California Code of Regulations section 43404.  Like Government Code section

7   19253.5, the purpose of section 4304 is to enable a state employer, the University, to require

8   fitness-for-duty examination to evaluate whether an employee can perform his or her job duties.

9   Consistent with the Ninth Circuit's holding in *Yin*, an examination required pursuant to California

10  Code of Regulations section 43404 does not, as a matter of law, violate the ADA or the FEHA.

11  And because Ellis never submitted to an examination, she has no basis to allege that the

12  examination was unrelated to her job.  *See Sullivan*, 197 F.3d at 812 ("Since [plaintiff] never

13  submitted to the examinations, he precluded himself [in opposing summary judgment] from being

14  able to establish a genuine issue of material fact as to whether the exams were related to his job,

15  or were too broad in scope.")

16                                         **CONCLUSION**

17        Ellis's entire lawsuit should be dismissed for failure to state a claim against the University.

18  Neither the ADA nor the FEHA permitted Ellis to unilaterally refuse to comply with a fitness-for-

19  duty examination without being subject to disciplinary action, including termination.  As such,

20  Ellis's claims fail as a matter of law.

21  Dated:  June 12, 2015                        Respectfully submitted,

22                                               KAMALA D. HARRIS
                                                 Attorney General of California
23                                               FIEL D. TIGNO
                                                 Supervising Deputy Attorney General
24

25

26                                               /s/ Michael D. Gowe
                                                 MICHAEL D. GOWE
27                                               Deputy Attorney General
                                                 *Attorneys for Defendant*

28
    OK2015900357, Ellis motion to dismiss.doc
                                           9