Noah D. Lebowitz [SBN 194982]
DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, California 94104
Telephone: (415) 433-0333
Facsimile: (415) 449-6556
E-mail: noah@dplolaw.com

Attorneys for Plaintiff
LINDA ELLIS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

(San Francisco Division)

| | |
|---|---|
| LINDA ELLIS,<br><br>    Plaintiff,<br><br>v.<br><br>SAN FRANCISCO STATE UNIVERSITY, and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No. C-15-02273 TEH<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS UNDER FRCP 12(b)(6)**<br><br>Date: July 27, 2015<br>Time: 10:00 a.m.<br>Courtroom: 2<br>Judge: Hon. Thelton E. Henderson |

## I. INTRODUCTION

This motion requires us to ask a fundamental question: What is the purpose of a civil right if a person cannot oppose conduct infringing on that right?

The gravamen of Plaintiff Linda Ellis' complaint is that her employer, a public institution, ordered her to attend an unjustified medical examination as a condition of continued employment; when she opposed that order as a violation of her civil rights, she was terminated for insubordination. According to Defendant San Francisco State University ("SFSU" or "the University"), Ellis had no right to object to the exam and no right to oppose it's directive. Through this motion, SFSU asks this Court to hold, as a matter of law, that SFSU was justified in issuing its directive and Ellis cannot establish a violation of the Americans with Disabilities Act (42 USC § 12101 *et seq.*) ("ADA") or Fair Employment and Housing Act (Cal. Gov. Code § 12900 *et seq.*) ("FEHA"). Such a ruling at the pleadings stage is inappropriate and unsupported by authority.

## II. THE COMPLAINT

The Complaint sets forth seven causes of action:

(1)   Disability Discrimination (42 USC § 12112);

(2)   Retaliation (42 USC § 12203);

(3)   Declaratory Relief;

(4)   Disability Discrimination – Termination of Employment (Cal. Gov. Code § 12940(a));

(5)   Unlawful Medical Examination (Cal. Gov. Code § 12940(f));

(6)   Retaliation (Cal. Gov. Code § 12940(h)); and

(7)   Failure to Prevent Discrimination & Retaliation (Cal. Gov. Code § 12940(k))

In a nutshell, this case is about SFSU's demand for Ellis to undergo an unlimited psychological examination as a condition of continued employment. Complaint ¶¶ 30-37.[1] Ellis objected,

---

[1] SFSU's footnote 1 is an improper inclusion of "facts" beyond the four corners of the Complaint and should be disregarded as a violation of Rule 12(b)(6). Suffice it say, Ellis takes great issue with the conclusory nature of the quoted statements and will provide substantial contrary evidence at the appropriate juncture in this case.

- 1 -

PLAINTIFF'S MEM. OF P&A IN OPP. TO DEFENDANT'S MOT. TO DISMISS

citing the lack of factual basis for the directive. *Id.* at ¶ 38-46.  She also objected to the fact that the exam was unlimited. *Id.*

In its directive, SFSU did not even identify the type of exam to be performed. *Id.* at ¶¶ 35-37.  It was only after Ellis did her own internet search that she determined the designated examiner was a psychologist. *Id.* at ¶ 40.  From that research, she learned that the exam was to be psychological exam. *Id.*  Ellis then asked SFSU to explain what tests would be performed and how the exam would be carried out. *Id.* at ¶ 41.  SFSU refused to provide her any information. *Id.* at ¶¶ 47-48.  Instead, the University declared that Ellis must attend the exam without any further information; should she decide to not attend the exam, the University would impose discipline up to and including termination. *Id.* at ¶¶ 50, 58.

On several occasions, Ellis sought SFSU's assistance in understanding the basis for the exam and the scope of the exam, citing her civil right to be free from medical exams which were not based on business necessity and not job related. *Id.* at ¶ 49.  On each of these occasions, SFSU refused to provide any additional information. *Id.* at ¶¶ 50, 59.  SFSU acknowledged that Ellis was asserting her civil rights, but refused to alter its chosen path. *Id.* at ¶ 56.

True to its promise, SFSU engaged in progressive discipline culminating in termination of Ellis' 28-year career. *Id.* at ¶¶ 55-57, 62.  The stated reason:  insubordination for failure to attend the medical examination. *Id.* at ¶¶ 62-63.  The University's stated authority to carry out this discipline was Title 5 of the California Code of Regulations, Section 43404. *Id.* at ¶ 62.  That regulation was promulgated prior to the enactment of the ADA or the FEHA's medical examination prohibitions. *Id.* at ¶ 83.  Section 43404 has no limitations and does not provide the protections set forth in either the ADA or FEHA. *Id.* at ¶¶ 82-83.

### III. LEGAL ARGUMENT

#### A. ELLIS' ADA CLAIMS SURVIVE CONSTITUTIONAL CHALLENGE UNDER SECTION 504 OF THE REHABILIATION ACT OF 1973

Ellis concedes that her ADA claims for money damages are barred now that SFSU raises its sovereign immunity.  However, this circumstance does not extinguish the substance of the

claims set forth under the First and Second Cause of Action. By accepting federal financial assistance, SFSU has waived any 11th Amendment immunities from suits brought under the Rehabilitation Act of 1973. *Douglas v. California Dept. of Youth Auth.*, 271 F.3d 812, 819-21 (9th Cir. 2001). Section 504 of the Rehabilitation Act specifically incorporates Title I and Title V of the ADA.

> The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 *et seq*.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201–12204 and 12210), as such sections relate to employment.

29 USC § 794(d). Ellis' First Cause of Action is brought under Title I of the ADA and her Second Cause of Action is brought under Title V. Thus, an amendment to add a Section 504 claim to cover both of those causes of action would be viable and would cure the constitutional defects in the current complaint. Ellis hereby requests leave to make such an amendment.

**B. ELLIS' COMPLAINT SETS FORTH VIABLE CAUSES OF ACTION FOR VIOLATION OF THE ADA AND FEHA**

### 1. The Law Of Workplace Medical Exams

Both federal and California law place limitations on when a covered employer may require an employee to undergo a medical examination as a condition of continued employment. Those limitations are spelled out in the ADA and FEHA in identical terms.

First, there must be a "business necessity" for the examination. 42 USC § 12112(d)(4); Cal. Gov. Code § 12940(f). A "business necessity" is something that is "vital to the business." *Conroy v. New York State Dept. of Correct. Svcs.*, 333 F.3d 88, 97-98 (2d Cir. 2003); 2 Cal. Code Regs. § 11065(b). Various characteristics of this standard bear directly on this case. For instance, this standard "is quite high, and is not to be confused with mere expediency." *Cripe v. City of San Jose*, 261 F.3d 877, 890 (9th Cir. 2001); *see also Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir. 2014). Moreover, the standard "is objective." *Brownfield v. City of Yakima*, 612 F.3d 1140, 1146 (9th Cir. 2010) (citing *Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 518). Most importantly, "*[t]he employer bears the burden of demonstrating*

- 3 -

*business necessity.*" *Id.* (citations omitted) (emphasis added).  One court explained the requirement this way:

> Thus, for an employer's request for an exam to be upheld, there must be *significant evidence* that could cause *a reasonable person* to inquire as to whether an employee is still capable of performing his job.  An employee's behavior *cannot be merely annoying or inefficient* to justify an examination; rather, there must be *genuine reason* to doubt whether that employee can "perform job-related functions."  . . . [A] fitness-for-duty exam . . . is not an excuse for every wide-ranging assessment of mental or physical debilitation that could conceivably affect the quality of an employee's job performance.

*Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 811-12 (6th Cir. 1999) (citation omitted) (emphasis added).

Even if an employer proves there is objective evidence that requiring an employee to undergo a medical exam is vital to the business, that is not the end of the inquiry.  The employer must also prove that the required exam is "job related."  42 USC § 12112(d)(4); Cal. Gov. Code § 12940(f); *Kroll*, 763 F.3d at 623 (employer's burden to prove the exam is job related).  To be job related, an exam must be "tailored to assess the employee's ability to carry out the essential functions of the job or to determine whether the employee poses a danger to the employee or others due to disability." 2 Cal. Code Regs. § 11065(k).  In other words, the employer has a responsibility to ensure that the exam being administered actually evaluates the employee's ability to carry out her essential job functions.

SFSU challenges Ellis' claims for unlawful examination on several levels, none of which is appropriate for determination on a motion to dismiss.  As noted above, it is SFSU's burden to prove that the exam complied with the dual standards articulated by the ADA and FEHA. *See Kroll*, 763 F.3d at 623.  It is impossible to make that determination without an examination of the facts and circumstances surrounding the directive to submit to the medical evaluation, as well as analyze the scope of that examination to determine if it was job related.  Indeed, every single one of the cases cited by SFSU in its motion was decided on a motion for summary judgment, *i.e.*, after discovery and examination of the evidence.  And each of those cases reached its conclusion only after setting forth the detailed facts and circumstances leading to the required medical

examination and analyzed how those facts and circumstances met, or did not meet, the dual legal standards set forth in the ADA.

### 2. SFSU's Argument is Based On Presumption and Suppositions Unsupported by Law

To rule in favor of SFSU on this motion would be to gut the ADA and FEHA's protections against unlawful medical exams of any meaning. According to SFSU, "Ellis was required to comply with the fitness-for-duty directive or risk disciplinary action, up to termination." *Def's. P&A* at 6:2-3. To reach this determination, the Court would be required to adopt the University's statement of the law: "But the law does not impose liability on a public employer, like the University, for exercising *its lawful authority* to require a fitness-for-duty examination, even if the employee disagrees with the reasons for the examination." *Def's. P&A* at 5:21-24 (emphasis added). This statement is pregnant with the presumption that the University was, indeed, "exercising its lawful authority" when it ordered Ellis to attend the unlimited psychological exam in this case. The only way to reach that conclusion would be to examine the evidence and determine whether the University in fact had a reasonable, objective, basis to determine that ordering Ellis to attend the exam was "vital to the business" of the University, and that it had taken steps to ensure that the required exam was "job related." *See Brownfield*, 612 F.3d at 1146; *Kroll,* 763 F.3d at 623; 2 Cal Code Regs §§ 11065(b),(k).

In essence, SFSU's argument is based on the presumption that the only way for Ellis to challenge the medical exam is if she first submitted to the exam, then raised an objection. There is no authority for this position. Rather, there is authority supporting Ellis' position – that she can bring this case challenging both the substance and character of the exam as well as the discipline that derived from her refusal to submit to the exam. The Sixth Circuit case of *Kroll v. White Lake Ambulance Authority* is one example of that scenario. In *Kroll*, the plaintiff was an ambulance driver. 763 F.3d at 620. After one or two "emotional outbursts," Kroll's employer ordered her to attend psychological counseling.[2] *Id.* at 620-21. Kroll objected to the order and

---

[2] In an earlier decision, the Sixth Circuit determined that that the order to attend psychological counseling qualified as a "medical examination" under the ADA. *See Kroll v. White Lake Ambulance Auth.*, 691 F.3d 809 (6th Cir. 2012).

- 5 -
PLAINTIFF'S MEM. OF P&A IN OPP. TO DEFENDANT'S MOT. TO DISMISS

1  declined to attend the counseling. *Id.* at 622.  The employer terminated Kroll for insubordination
2  and she brought suit under the ADA. *Id.* at 620.  After evaluating the facts and the evidence, the
3  Sixth Circuit held that Kroll could proceed on her claims against her employer, reversing the
4  District Court's grant of summary judgment. *Id.* at 627.

5        What *Kroll* demonstrates is a useful analogue to the present case.  In *Kroll*, the employee
6  was ordered to undergo a medical examination that she believed was unjustified on the facts.
7  She objected and refused to attend, leading to her termination.  That is precisely what happened
8  with Ellis.  She was ordered to undergo a psychological medical examination that she believed
9  was unjustified on the facts.  Complaint ¶¶ 38-46, 49, 59.  She objected and refused to attend,
10 leading to her termination.  *Id.* ¶¶ 55-57, 62-63.  Based on the facts and circumstances
11 surrounding the employer's directive to submit to psychological counseling, the Sixth Circuit
12 ruled that Kroll had raised a triable issue of fact as to her claims for unlawful medical exam and
13 discriminatory termination.  In other words, it did *not* hold that Kroll was prohibited from
14 pursuing her claims because she did not actually submit to the exam first, then sue. But the
15 University would have this Court hold otherwise.  According to SFSU, even though Ellis knew
16 there was no legitimate basis for the directive, she was required to undergo the examination
17 before she could challenge it.  Query, if an employee knows the stated grounds for a fitness for
18 duty exam are bogus, does the law still require her to submit to that exam, no matter the scope
19 before she can stand on her rights?  If that is the rule, then ADA and FEHA have no purpose.

20       In its motion, SFSU further argues "Ellis does not claim that the University's basis for the
21 directive is inconsistent with the ADA or FEHA." *Def's P&A* at 3:1-2.  Of course she does.
22 Throughout the factual allegations of the Complaint, Ellis sets forth facts demonstrating the lack
23 of justification for the directive that she submit to a medical exam. *See e.g.,* Complaint ¶¶ 38-46,
24 49, 59.  Then, she sets forth allegations that SFSU's directive violated the ADA and FEHA
25 because it did not meet the laws' dual standards for justification of such a directive.  *Id.* at ¶¶ 68,
26 71, 92-96.  Thus, SFSU's attempt to narrow the claims pled in this case should be rejected.

27       Finally, Ellis' objections to the requirement that she submit to an unlimited medical exam
28 were voiced as opposition to conduct she reasonably believed to be prohibited by the ADA and

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

FEHA.  This opposition amounts to protected activity.  42 USC § 12203(a); Cal. Gov. Code 12940(h).  Ellis was disciplined, then fired.  The University's stated reason for disciplining, then terminating, Ellis was her refusal to attend (*i.e.*, opposition to) the medical examination.  Complaint ¶¶ 55-57, 62-63.  Thus, there is direct evidence of a causal link between Ellis' protected activity and the adverse action.  There is no, and SFSU cites no, basis or authority to dismiss a claim at the pleadings stage under these circumstances.

### 3. SFSU Provides No Authority to Support its Argument that Section 43404 Complies with the ADA and FEHA

SFSU asks this Court to rule, as a matter of law, that the "intent" of Section 43404 was to comply with the dual requirements of the ADA and FEHA that a medical exam be supported by a business necessity and be job related.  However, the University provides no authority regarding the "intent" of the regulation.  Because the adoption of Section 43404 pre-dates the ADA by six years and the FEHA's medical exam requirements by 14 years (Complaint ¶ 83), there can be no way that the regulation contemplated either of those laws' requirements.

SFSU then attempts to draw a parallel to Government Code section 19253.5, and declares it "has been deemed by the Ninth Circuit to be consistent with the ADA."  *Def's. P&A* at 8:5-6.  For this declaration, SFSU cites *Yin v. State of Calif.*, 95 F.3d 864, 867 (9th Cir. 2005).  But, *Yin* does not stand for this proposition at all.  The Ninth Circuit's only references to Section 19253.5 are in footnotes in the section of the opinion analyzing the plaintiff's Fourth Amendment claim.  Nothing in that section of the opinion references the ADA or the dual pronged business necessity or job related requirements.  Rather, the page cited by SFSU is the section analyzing the plaintiff's claim under the ADA; that section does not mention, reference, or analyze in any way the interplay of the ADA and Section 19253.5.  Instead, that section of the opinion analyzes the specific facts and circumstances of the plaintiff's workplace behavior (*e.g.,* "Yin had missed an inordinate amount of days", and "Yin's excessive absenteeism had taken a serious and deleterious toll on her productivity and overall job performance.").  95 F.3d at 868.

The fundamental problem with the University's argument arises from its aggregation of concepts and unwillingness to unwind the dual requirements of the ADA and FEHA in regard to

PLAINTIFF'S MEM. OF P&A IN OPP. TO DEFENDANT'S MOT. TO DISMISS

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

1 medical exams.  To begin, *missing entirely* from Section 43404 is the necessary condition
2 precedent to requiring a medical exam:  That the employer have objective facts leading a
3 reasonable person to determine that requiring the employee to undergo the medical exam is vital
4 to the business of the University.  Because this requirement is missing from Section 43404, the
5 regulation puts the University under no legal obligation to articulate any facts or basis for the
6 exam.  The regulation flatly states that the University "may require an employee to submit to a
7 medical examination. . . . ."  5 Cal Code Regs § 43404.  In order to be compliant with the ADA
8 and FEHA, the regulation would have to place the onus on the University to have a business
9 necessity *before* "require[ing] the employee to submit to a medical examination. . . ."
10 Secondly, Section 43404 does not comply with the ADA and FEHA's requirement that an exam
11 be job related.  While SFSU argues that an exam "'to evaluate the capacity of the employee *to*
12 *perform the work of his or her position*'" is akin to a "job related" exam (*Def's. P&A* at 8:8-9
13 (emphasis in original) (quoting Section 43404)), there is no authority to support that assertion.
14 No authority can support that assertion because the regulation is missing a crucial element:  that
15 the exam be limited to determining if the employee can perform the *essential* functions of her
16 job.  2 Cal Code Regs § 11065(k).  Evaluating an employee's ability to perform the essential
17 functions of her job is a much different task from evaluating her ability to perform the work (*i.e.*,
18 all the functions and tasks) of a job.  *See e.g.,* 2 Cal Code Regs § 11065(e) (differentiating
19 between essential job functions and marginal job functions).  Section 43404 makes no
20 differentiation between essential and non-essential job functions.  Thus, by its own terms,
21 Section 43404 is overinclusive and noncompliant with the ADA and FEHA.
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28

- 8 -
PLAINTIFF'S MEM. OF P&A IN OPP. TO DEFENDANT'S MOT. TO DISMISS

## IV. CONCLUSION

Based on the foregoing, Ellis requests leave to amend her First and Second Cause of Action to allege claims under Section 504. Ellis further requests all other aspects of this motion be denied.

Dated:  June 25, 2015            DUCKWORTH PETERS LEBOWITZ OLIVIER LLP


                                 By: /s/   Noah D. Lebowitz    ,
                                     Noah D. Lebowitz
                                 Attorneys for Plaintiff Linda Ellis

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

PLAINTIFF'S MEM. OF P&A IN OPP. TO DEFENDANT'S MOT. TO DISMISS