Noah D. Lebowitz [SBN 194982]
DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, California 94104
Telephone: (415) 433-0333
Facsimile: (415) 449-6556
E-mail: noah@dplolaw.com

Attorneys for Plaintiff
LINDA ELLIS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

(San Francisco Division)

| | |
|---|---|
| LINDA ELLIS,<br><br>      Plaintiff,<br><br>v.<br><br>SAN FRANCISCO STATE UNIVERSITY, and DOES 1 through 10, inclusive,<br><br>      Defendants. | Case No. C-15-02273 TEH<br><br>**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PARTIAL SUMMARY JUDGMENT RE: THIRD CAUSE OF ACTION AND AFFIRMATIVE DEFENSE NO. 47; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT THEREOF**<br><br>Date:          December 14, 2015<br>Time:         10:00 a.m.<br>Courtroom:  2, 17th Floor<br>Judge:        Hon. Thelton E. Henderson |

# NOTICE OF MOTION & MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 14, 2015, at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 2, 17th Floor, before the Honorable Thelton E. Henderson of the U.S. District Court for the Northern District of California, Plaintiff Linda Ellis will, and hereby does, move the Court for an order for partial summary judgment pursuant to Federal Rule of Civil Procedure 56.  Ellis seeks an Order adjudicating her Third Cause of Action ("Declaratory Relief") in her favor.  Ellis further seeks an order entering judgment in her favor in regard to the Defendant's Affirmative Defense No. 47.

This motion is made pursuant to the Court's Order setting the hearing for this motion (Dkt. 26).  It is based upon this Notice of Motion & Motion, the supporting Memorandum of Points and Authorities, any papers filed in reply, the argument of counsel, and all papers and records on file in this matter.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This motion presents the Court with a matter of first impression:  Was Section 43404 of Title 5 of the California Code of Regulations (entitled "Medical Examination") superseded by the enactment of the Americans with Disabilities Act of 1990 ("ADA") and 2000 amendments to the California Fair Employment and Housing Act ("FEHA")?  We believe the answer is in the affirmative and can be disposed of as a matter of law.

Plaintiff Linda Ellis ("Ellis") filed this lawsuit against her former employer San Francisco State University ("SFSU") for damages arising from the termination of her employment in December 2014.  The First Amended Complaint ("FAC") sets forth seven causes of action, including the Third Cause of Action for Declaratory Relief.  In that Third Cause of Action, Ellis seeks a declaration from this Court that Section 43404 was superseded by the medical examination restrictions articulated in the ADA and FEHA.  In addition, the Defendant's Answer

to Plaintiff's First Amended Complaint ("Answer")[1] sets forth 47 separate affirmative defenses. Affirmative Defense No. 47 pleads that SFSU cannot be held liable under the ADA or FEHA because it complied with Section 43404. Thus, the parties have placed the issue of the interplay of these various provisions of the law squarely before this Court. The facts underlying both the Third Cause of Action and Affirmative Defense No. 47 are not in dispute. The question presented here purely is a question of law suitable for determination by Motion for Partial Summary Judgment.

## II. THE CLAIMS & DEFENSES AT ISSUE

The issue presented to this Court is framed by the pleadings in both the Third Cause of Action and Affirmative Defense No. 47.

The Third Cause of Action is pled as follows:

> 80. An actual controversy has arisen and now exists between the parties with respect to the application of Title 5, Section 43404 of the California Code of Regulations.
>
> 81. As described in Paragraphs 57 and 62, above, the Defendant contends that Section 43404 entitles it to send an employee to a medical exam any time the Defendant feels the need to determine if an employee is disabled from performing the duties of the position.
>
> 82. Ellis contends that Section 43404 is superseded by both federal law (42 USC § 12112(d)(1),(4)) and California law (Cal. Gov. Code § 12940(f)), requiring an employer prove that any medical examination of an employee both be job related and consistent with business necessity. Ellis further contends that Section 43404 sets forth a lesser standard than required by Section 12112(d)(1),(4) and Section 12940(f).
>
> 83. Section 43404 was last amended in 1984. Section 12112 was enacted by the United States Congress in 1990. Section 12940(f) was enacted by the California Legislature in 2000.
>
> 84. A determination as to the respect rights and obligations of the parties is necessary and appropriate under the circumstances.

---

[1] For the convenience of the Court, the FAC and Answer are attached as Exhibit A and B, respectively, to the Declaration of Noah D. Lebowitz in Support of Plaintiff's Motion for Partial Summary Judgment Re: Third Cause of Action & Affirmative Defense No. 47.

- 2 -

FAC ¶¶ 80-84. The Defendant's Answer sets forth 47 separate affirmative defenses. Affirmative Defense No. 47 is pled as follows:

> Defendant cannot be liable under the Rehabilitation Act for requiring Plaintiff to undertake a medical exam under section 43404 of the California Code of Regulations.

Answer at 15:22-24.

## III.  UNDISPUTED MATERIAL FACTS

Ellis was employed as a professor in SFSU's Museum Studies Program from 1987 through December 2014.  FAC ¶¶ 6, 63; Answer ¶¶ 6, 63.  In May 2014, SFSU placed Ellis on "Temporary Suspension" and ordered her to undergo a fitness-for-duty examination.  FAC ¶ 30, Answer ¶ 30.  Ellis objected to the requirement that she undergo the exam, later discovered to be a psychological exam.  FAC ¶¶ 38-46; Answer ¶¶ 38-46.  SFSU replied by informing Ellis "This is a direct work instruction by an appropriate University Administrator.  Failure to report to this appointment and cooperate will be viewed as an act of insubordination and subject to disciplinary action."  FAC ¶ 47; Answer ¶ 47.  Ellis responded:

> The university has not provided any facts to describe why it believes an unlimited psychological examination is being required.  Neither has SFSU named and described any of the tests or evaluations that will be administered during this psychological exam.  [¶] Therefore, SFSU is in violation of my civil rights by forcing me to undergo an unlimited, psychological examination without proper justification.

FAC ¶ 49; Answer ¶ 49.

Ellis did not attend the scheduled fitness-for-duty exam.  FAC ¶ 51; Answer ¶ 51.  As a result, SFSU issued a formal Notice of Intent to impose disciplinary action against Ellis:  Three day suspension.  FAC ¶ 55; Answer ¶ 55.  SFSU articulated its "Reasons for Discipline" as follows:

> The California Code of Regulations states that an employee may be required to submit to an examination to evaluate whether the employee is able to perform the duties of the position.

FAC ¶ 57; Answer ¶ 57.  SFSU then set up another appointment for Ellis to undergo the fitness-for-duty exam, and again Ellis refused to attend as a continued violation of her civil rights.  FAC

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

¶¶ 58-61; Answer ¶¶ 58-61.  As a result, SFSU issued a "Notice of Intent of Dismissal."  FAC ¶62; Answer ¶ 62.  In that notice, the University set forth its basis for imposition of the dismissal as follows:

> Failure to submit to a medical examination by a physician as determined necessary by San Francisco State University is a violation of § 43404 of the California Code of Regulations Title X [*sic*].  Your repeated failure to attend the Fitness for Duty evaluations, *inter alia*, amounts to unprofessional conduct and failure or refusal to perform the normal and reasonable duties of the position, as those terms are used in subdivisions (b) and (f) of the California Education Code §89535.

*Id.*  SFSU subsequently confirmed its decision to terminate Ellis' employment based on the reasons set forth in the Notice of Intent, effective December 2, 2014.  FAC ¶ 63; Answer ¶ 63.

## IV. PARTIAL SUMMARY JUDGMENT

Federal Rule of Civil Procedure permits a party to move for summary judgment on claims, defenses, or issues.  Fed. R. Civ. Pro. 56(a).  Under that section, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*   This motion presents the Court with just such a scenario.  In particular, the issue described in this motion is specifically framed by both the First Amended Complaint (Third Cause of Action for Declaratory Relief) and the Answer (Affirmative Defense No. 47).  The material facts relevant to those legal issues are undisputed.  As explained below, Ellis is entitled to judgment as a matter of law.

## V. LEGAL ARGUMENT

### A. THE LEGAL STANDARDS AT ISSUE

#### 1. Title 5 of the California Code of Regulations

Title 5, Division 5 of the California Code of Regulations sets forth regulations promulgated by the Board of Trustees of the California State Universities.  These regulations were promulgated under the authority expressed in California Government Code section 89030.  Under that provision, the Board of Trustees was granted authority to promulgate regulations "not inconsistent with the laws of this state."  Cal. Gov. Code § 89030(a).  One such regulation

- 4 -

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

promulgated under this authority was Section 43404 of Title 5: "Medical Examination." That regulation reads, in pertinent part, as follows:

> Any permanent . . . employee may be required to submit to medical examination by a physician or physicians designated by the appointing power to evaluate whether or not the employee is disabled from performing **the duties of the position**.

5 Cal. Code Regs. § 43404. This section was last amended in 1984. FAC ¶ 83; Answer ¶ 83.

### 2. The Americans with Disabilities Act & Rehabilitation Act

The ADA was enacted in 1990. Title I of that law, among other things, imposes restrictions on employers' ability to require employees to undergo medical examinations. In particular, an employer may only require such exams if they are "shown to be job related and consistent with business necessity." 42 USC § 12112(d)(1),(4); 29 CFR § 1630.14(c). As explained by the EEOC, "[t]his provision permits employers to make inquiries or require medical examinations (fitness for duty exams) when there is a need to determine whether an employee is still able to perform **the essential functions of his or her job**." 29 CFR § 1630.14(c) App. (emphasis added). A job function may be determined to be "essential" "because the reason the position exists is to perform that function. . . .[or] . . . because of the limited number of employees available among whom the performance of that job function can be distributed . . . [or] . . . the function may be highly specialized. . . ." 29 CFR § 1630.2(n). Section 504 of the Rehabilitation Act of 1973 directly incorporated the standards of Title I of the ADA, including the medical exam restrictions. 29 USC § 794(d).

When Congress passed the ADA, it made explicit that the law was meant to be the floor of protections. Any state or local law which provided greater or equal protections would not be impacted. 42 USC § 12201(b). This concept was reinforced in the regulations adopted to enforce the ADA. 29 CFR § 16301(c)(2). The EEOC explained the meaning of this construction as follows:

> In addition, unless expressly stated otherwise, the standards applied in the ADA are intended to provide at least as much protection as the standards applied under the Rehabilitation Act of 1973. The ADA does not preempt any Federal law, or any State or local law, that grants to individuals with

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

disabilities protection greater than or equivalent to that provided by the ADA. This means that the existence of a lesser standard of protection to individuals with disabilities under the ADA will not provide a defense to failing to meet a higher standard under another law. Thus, for example, title I of the ADA would not be a defense to failing to prepare and maintain an affirmative action program under section 503 of the Rehabilitation Act. **On the other hand, the existence of a lesser standard under another law will not provide a defense to failing to meet a higher standard under the ADA**. See 1990 House Labor Report at 135; 1990 House Judiciary Report at 69-70.

29 USC § 1630.1(c) App. (emphasis added).  The clear purpose of the ADA, then, was to supersede any existing state or local law that did not provide protections that were *at least* equal to those provided by the ADA.

### 3. The Fair Employment and Housing Act

In 2000, the California Legislature passed the Prudence K. Poppink Act.  Among other things,[2] that Act amended the FEHA to bring it in line with the ADA's restrictions on medical examinations of employees by enacting what was codified in Section 12940(f) of the California Government Code.  FAC ¶ 83; Answer ¶ 83.  That section incorporated restrictions identical to those in the ADA, namely that an employer only may require employee medical examinations that "it can show to be job related and consistent with business necessity."  Cal. Gov. Code § 12940(f)(2); *see also* 2 Cal. Code Regs. § 11071(d)(1) ("An employer or other covered entity may make disability-related inquires, including fitness for duty exams, and require medical examinations of employees that are both job-related and consistent with business necessity."). The California regulations define "business necessity" and "job-related" as follows:

> (b) "Business Necessity," as used in this article regarding medical or psychological examinations, means that the need for the disability inquiry or **medical examination is vital to the business**.
>
> (k) "Job-related," as used in sections 11070, 11071 and 11072 means **tailored to assess the employee's ability to carry out the essential functions of the job** or to determine whether the employee poses a danger to the employee or others due to disability.

---

[2] The Poppink Act also made explicit that the ADA represented the "floor" of protections, while the FEHA has "always . . . afforded additional protections." Cal. Gov. Code § 12926.1(a).

- 6 -

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

2 Cal. Code Regs. § 11065(b), (k) (emphasis added).  Aside from some minor wording differences, the California regulations definition of "essential job functions" is identical to the definition found in the federal regulations. *Id.* at § 11065(e)(1).  The California regulations further define the distinction between "essential" functions and those that are non-essential, referred to in the regulations as "marginal functions."[3]

> "Essential functions" do not include the marginal functions of the position. "Marginal functions" of an employment position are those that, if not performed, would not eliminate the need for the job or that could be readily performed by another employee or that could be performed in an alternative way.

*Id.* at § 11065(e)(3).

## B. SECTION 43404 CANNOT STAND IN THE FACE OF THE ADA & FEHA

This is a matter of first impression.  No known authority, published or otherwise, addresses the issue of Section 43404's application post-1990.  In fact, the only published case citing Section 43404 is a 1987 California Court of Appeal case in which the plaintiff sought a "liberty hearing" in order to "clear her name" due to the "stigma" attached to being ordered to undergo a psychiatric examination.  *Hill v. California State Univ.*, 193 Cal.App.3d 1081, 1090-92 (1987).  That case has no application here.

The conflict between the provisions of Section 43404 when compared to the ADA and FEHA is plain on its face.  Section 43404 permits a CSU employer to require an employee to attend a fitness for duty exam "to evaluate whether or not the employee is disabled from performing the **duties of the position**."  5 Cal. Code Regs § 43404 (emphasis added).   The ADA and FEHA restrict any such medical examinations to efforts to evaluate whether or not the employee is disabled from performing the **essential functions** of the position.  The import of this material distinction in scope cannot be understated.  As described above, the regulations implementing the ADA and FEHA define essential functions.  By contrasting "essential" functions with "marginal" functions, the regulations emphasize that not all functions (or duties) are essential.  Rather, only a subset of all of a particular job's duties are typically considered

---

[3] The federal regulations also use the phrase "marginal functions" but do not define the phrase beyond using it as the counter to "essential functions."  *See* 29 CFR § 1630.2(n)(1).

1  "essential."  Thus, the scope of "essential" functions is by definition more narrow than all
2  functions, or all duties that a job.  Section 43404 does not restrict medical exams to those that
3  seek to determine if an employee is able to perform the "essential functions" of her position.
4  Rather, Section 43404 permits such evaluations that seek to determine if an employee is able to
5  form "the duties" of her position.  This language is overbroad and does not contain the
6  protections of state or federal law.  The ADA is intended to provide the floor of protections
7  across the country.  Any laws or regulations that do not reach that basic floor of protection are
8  therefore superseded.  42 USC § 12201(b); 29 USC § 1630.1(c) App.  In addition, by failing to
9  limit the scope of medical exams to "essential functions," Section 43404 is inconsistent with the
10 laws of California (*i.e.,* Cal. Gov. Code § 12940(f)) and violates the statute empowering the
11 Board of Trustees to promulgate regulations.  *See* Cal. Gov. Code § 89030(a).
12         Based on prior articulations, we expect SFSU to argue in response to this motion that the
13 restrictive concepts of job relatedness and business necessity are imbedded in the language of
14 Section 43404, and therefore there is no conflict.  This argument cannot stand.  To begin, The
15 Miriam Webster Dictionary defines "duty" as:  "something that is done as part of a job."  There
16 can be no argument that this word is in any way coextensive with the phrase "essential function"
17 as that phrase is used in the ADA and FEHA.  Secondly, logic cannot support this argument.  It
18 is undisputed that Section 43404 was promulgated long before the ADA and FEHA's restrictions
19 were enacted.  The last time Section 43404 was amended for any reason was 1984, six years
20 prior to the passage of the ADA and 16 years before the adoption of the Poppink Act.  FAC ¶ 83;
21 Answer ¶ 83.  To adopt SFSU's position would be to imbue the CSU Board of Trustees with
22 mystic powers by which they saw into the future and intended the broad, unlimited language –
23 "duties of the position" – to hold the meaning set forth by the later-enacted restrictive language
24 of the ADA and FEHA, limiting employee medical exams to the "essential functions of the
25 position."
26 ///
27 ///
28 ///

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

- 8 -
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**VI. CONCLUSION**

Section 43404 of Title 5 of the California Code of Regulations is overbroad in scope and fails to provide protections that are equal to or greater than the ADA or FEHA.  As such, the provisions cannot stand, as a matter of law.  There are no disputed material facts regarding this issue.  It is purely a matter of application of law.  Ellis respectfully requests this Court enter judgment in her favor as to both the Third Cause of Action and Affirmative Defense No. 47.

Dated:  November 9, 2015             DUCKWORTH PETERS LEBOWITZ OLIVIER LLP


                                     By:___/s/ Noah D. Lebowitz____,
                                          Noah D. Lebowitz
                                     Attorneys for Plaintiff Linda Ellis