Noah D. Lebowitz [SBN 194982]
DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, California 94104
Telephone: (415) 433-0333
Facsimile: (415) 449-6556
E-mail: noah@dplolaw.com

Attorneys for Plaintiff
LINDA ELLIS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

(San Francisco Division)

| | |
|---|---|
| LINDA ELLIS,<br><br>  Plaintiff,<br><br>v.<br><br>SAN FRANCISCO STATE UNIVERSITY, and DOES 1 through 10, inclusive,<br><br>  Defendants. | Case No. C 15-02273 TEH<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:  December 14, 2015<br>Time:  10:00 a.m.<br>Place:  Crtrm. 2, 17th Floor<br>Judge:  Hon. Thelton E. Henderson |

## I. INTRODUCTION

The issue presented by this motion (and by the plaintiff's simultaneously filed motion for partial summary judgment) is really quite straightforward. The Americans with Disabilities Act ("ADA")[1] superseded all laws and regulations that did not provide *at least* as much protection for employees as did the Act. 42 U.S.C. § 12201(b). Similarly, the California Government Code authorized the CSU Board of Trustees to promulgate regulations *only* if such regulations were "not inconsistent with the laws of this state. . ." Cal. Gov. Code § 89030(a). As explained in detail in Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 28), Section 43404 of Title 5 of the California Code of Regulations falls below the floor of protections provided by the ADA and is inconsistent with the California Fair Employment and Housing Act ("FEHA"). Thus, it has been superseded by both federal and state law, and Plaintiff Linda Ellis is entitled to judgment on her Third Cause of Action for Declaratory Relief as well as SFSU's Affirmative Defense No. 47.

We will endeavor to not repeat here the arguments made in her motion except to say that she incorporates such arguments by reference. What follows will instead be an explanation as to why the arguments made by SFSU in the present motion do not provide grounds for the relief it seeks.

## II. ARGUMENT

### A. SECTION 43404 STANDS AS AN OBSTACLE TO THE ACCOMPLISHMENT OF CONGRESSIONAL PURPOSE IN ENACTING THE ADA's MEDICAL INQUIRY RESTRICTIONS

As SFSU correctly points out, federal jurisprudence permits a court to find preemption in any of three circumstances. *See e.g., California Fed. Sav. & Loan v. Guerra*, 479 U.S. 272, 280-81 (1987). We similarly agree with SFSU that only the third avenue of preemption applies here (*i.e.*, we agree that Congress did not expressly preempt state law, nor did Congress express an

---

[1] The Plaintiff's relevant substantive claim in this case is articulated as a violation of Section 504 of the Rehabilitation Act of 1973. *See* First Amended Complaint at 10:1-11:25. That law fully incorporated Title I of the ADA. *See* 29 U.S.C. § 794(d), including the medical exam restrictions, thus, the remainder of this brief will refer to the ADA and Rehabilitation Act interchangeably.

- 1 -

intent to "occupy the field" with the ADA).  Where we disagree with SFSU is in the application of the third standard.  Under this standard, a state law will be preempted "**either** because 'compliance with both federal and state regulations is a physical impossibility' . . . **or** because the state law stands 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (emphasis added); *see also Wood v. County of Alameda*, 875 F. Supp. 659, 664-65 (N.D. Cal. 1995).  While SFSU refers to this language, it then proceeds to analyze only the first clause (*i.e.*, whether compliance is a "physical impossibility).  The appropriate analysis in this case is focused on the second clause (*i.e.*, whether Section 43404 "stands as an obstacle").  Stated another way, the question in this case is more properly phrased as whether or not Section 43404 "inhibit[s] the achievement of Congressional objectives." *Credit Suisse First Bos. Corp. v. Grunwald*, 400 F.3d 1119, 1133 (9th Cir. 2005).   It is under this second clause where Section 43404 fails.

### 1. Section 43404 Stands as an Obstacle to Congressional Intent

In order to determine whether a state regulation stands in the way of the accomplishment of the ADA's restrictions on medical inquiries, we must discern Congress' intent in adopting these provisions.  The EEOC explained the context underlying the need for the ADA's medical inquiry restrictions as follows:

> Historically, many employers asked applicants and employees to provide information concerning their physical and/or mental condition. This information often was used to exclude and otherwise discriminate against individuals with disabilities -- particularly nonvisible disabilities, such as diabetes, epilepsy, heart disease, cancer, and mental illness -- despite their ability to perform the job. The ADA's provisions concerning disability-related inquiries and medical examinations reflect Congress's intent to protect the rights of applicants and employees to be assessed on merit alone, while protecting the rights of employers to ensure that individuals in the workplace can efficiently perform the essential functions of their jobs.

*EEOC Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act (ADA)*, "General Principles," § A.  In carrying out this intent, Congress restricted medical evaluations of employees to those limited circumstances where the exam was justified by a business necessity and the exam was job

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

1  related.  As defined by the regulations and case law, "business necessity" means that the need for
2  the exam is "vital to the business."  *Conroy v. New York State Dept. of Corr. Svcs.*, 333 F.3d 88,
3  97-98 (2nd Cir. 2003); *cf.* 2 Cal. Code Regs. § 11065(b).  And, a medical exam is "job related"
4  *only* if it is limited to evaluating the employee's ability to perform the "essential functions" of
5  her job.  29 C.F.R. § 1630.14(c) App.; *cf.* 2 Cal. Code Regs. 11065(k).  The phrase "essential
6  functions" is further defined by the regulations to mean "the fundamental job duties of the
7  employment position. . . ."  29 C.F.R. § 1630.2(n).  These provisions evidence Congress' intent
8  to *prohibit* employers from requiring medical exams that were either unjustified and/or overly
9  broad so that employees are "assessed on merit alone" and not on unfair factors unrelated to their
10 ability actually "perform the essential functions of their jobs."  But, these are precisely the types
11 of exams *permitted* by Section 43404 which allows any CSU employer, including SFSU, to
12 require an employee to submit to a medical exam "to evaluate whether or not the employee is
13 disabled from performing **the duties of the position**."  5 Cal. Code Regs. § 43404 (emphasis
14 added).  Because the phrase "duties of the position" is not further defined anywhere in the
15 regulations, we must attribute normal usage to the words.  The Miriam Webster Dictionary
16 defines "duty" as "something that is done as part of a job."  This definition is not limited by any
17 notion of the material distinction between "marginal" duties and "essential" – a distinction
18 acknowledged by the ADA.  *See* 29 C.F.R.. § 1630.2(n).  Moreover, Section 43404 contains *no*
19 *requirement* that the exam be "vital to the business" of the university.  Thus, it fails on both
20 counts.
21       Implicitly acknowledging these material defects, SFSU focuses its argument on the fact
22 that it is theoretically plausible for the CSU to operate under Section 43404 and the strictures of
23 the ADA simultaneously.  In essence, the CSU is saying to the Court:  "You can trust us.  We
24 will won't use Section 43404 more broadly than the ADA."   Congress, however, has already
25 determined that employers cannot be "trusted" to limit employee medical evaluations to the
26 essential functions of the job.  If that were the case, there would have been no need for these
27 restrictions.  Congress found a need "to provide a clear and comprehensive national mandate for
28 the elimination of discrimination against individuals with disabilities" because "forms of

- 3 -
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(b)(1), (a)(1). A form of such discrimination is in the overly broad use of medical exams of employees. *Id.* § 12112(d) (codifying medical examination restrictions under the general heading of "Discrimination").

In enacting the ADA, Congress sought to sweep away all overly broad employer medical inquiries. The restrictive terms "business necessity" and "job related" have meaning and purpose. At core, those terms are meant to protect employees from employer misuse of medical information – use of medical information to make employment decisions based on information irrelevant to the employee's ability to carry out the essential functions of her job. Any existing law that did not carry those same protections was preempted. 42 U.S.C. § 12201(b). Because Section 43404 does not provide *any* protections for employees, it falls beneath that floor of protections guaranteed by the ADA and stands as an obstacle to the accomplishment of Congressional intent.

### 2. By Pleading Compliance with Section 43404 as an Affirmative Defense, SFSU Has Conceded that Section 43404 Stands as an Obstacle to the ADA

In its Answer to Plaintiff's First Amended Complaint, SFSU included the following affirmative defense.

> Defendant cannot be liable under the Rehabilitation Act for requiring Plaintiff to undertake a medical exam under section 43404 of the California Code of Regulations.

Answer at 15:22-24 (Affirmative Defense No. 47). In other words, SFSU contends that complying with Section 43404 is a complete defense to any liability under the Rehabilitation Act. Thus, by its own articulation, Section 43404 stands as an obstacle to the ADA.

As explained above, Section 43404 sets forth a lesser standard than the ADA when it comes to the need or scope of medical exams for employees.[2] SFSU's articulation of Affirmative Defense No. 47 – as a defense to the higher standard articulated in the ADA – was rejected by Congress: "the existence of a lesser standard under another law will not provide a

---

[2] *See also* Plaintiff's Mot. Partial Sum. Judgment (Dkt. No. 28) at 4:23-6:9, 7:11-8:25.

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

defense to failing to meet a higher standard under the ADA. See 1990 House Labor Report at 135; 1990 House Judiciary Report at 69-70." 29 U.S.C. § 1630.1(c) App. Thus, carrying SFSU's argument forward will "inhibit the achievement of Congressional objectives." *Credit Suisse*, 400 F.3d at 1133. It is preempted.

### B. OPM'S REGULATION PROVES THE FATAL DEFECTS IN SECTION 43404

SFSU asks this Court to look to 5 C.F.R. § 339.301 – a regulation promulgated by the federal Office of Personnel Management – as persuasive authority. We agree; Section 339.301 is a perfect example of how to write a regulation that is not in conflict with ADA. According to SFSU, Section 339.301 is a near match to Section 43404. Here, we disagree. The flaw in SFSU's analysis is that it is only skin deep. A true, principled, analysis requires a definition of terms. When key terms are defined, it is apparent that the strictures of Section 339.301 fall well within the ADA's endorsement of existing laws that provide *at least as much protection* as the ADA. 42 U.S.C. § 12201(b). As we shall see, the requirements of Section 339.301 can be understood to be even *more protective* than the ADA. None of these protections exist within Section 43404.

#### 1. Section 339.301

The key to understanding the relationship between Section 339.301 and the ADA is in the specific terms of Section 339.301. That regulation reads as follows:

> (a) A routine preappointment examination is appropriate only for a position which has **specific medical standards**, **physical requirements**, or is covered by a **medical evaluation program** established under these regulations.
>
> (b) Subject to § 339.103 of this part, an agency may require an individual who has applied for or occupies a position which has **medical standards** or **physical requirements** or which is part of an established **medical evaluation program**, to report for a medical examination:
>
> > (1) Prior to appointment or selection (including reemployment on the basis of full or partial recovery from a medical condition);
> > (2) On a regularly recurring, periodic basis after appointment; or
> > (3) Whenever there is a direct question about an employee's continued capacity to meet the physical or medical requirements of a position.

5 C.F.R. § 339.301 (emphasis added).

### 2. The Key Terms of Section 339.301

SFSU argues that because this regulation does not use the terms "business necessity" or "job related," it is analogous to Section 43404. We have never argued that the only way an existing law or regulation to comply with the ADA or FEHA is if that existing provision contained the terms "business necessity" or "job related." Rather, we have argued that the term "duties" as used in Section 43404 is incompatible with the term "job related" based on the manner in which the term "job related" is defined in both the federal and state regulations, and that Section 43404's failure to restrict to the exams to when they are vital to the business similarly fails. Twice in Section 339.301, OPM limited the availability of medical exams to jobs which had "specific medical standards," "physical requirements," or which falls within a "medical evaluation program." 5 C.F.R. §§ 339.301(a), (b). OPM did not leave these key terms undefined. Rather, each term has a specific definition in the regulations. Because SFSU failed to recognize or acknowledge these definitions, we set them forth in detail below.

### a) "Specific Medical Standards"

One situation where a federal agency employer may send an employee for a medical examination is where the employee is employed in a position that has "specific medical standards." The phrase "specific medical standards" is defined as follows:

> OPM may establish or approve medical standards for a Government wide occupation (i.e., an occupation common to more than one agency). An agency may establish medical standards for positions that predominate in that agency (i.e., where the agency has 50 percent or more of the positions in a particular occupation). Such standards must be **justified** on the basis that the **duties of the position are arduous or hazardous, or require a certain level of health status or fitness because the nature of the positions involve a high degree of responsibility toward the public or sensitive national security concerns**. The **rationale** for establishing the standard **must be documented**. Standards established by OPM or an agency must be:
>
> (a) Established by **written directive and uniformly applied**,
> (b) **Directly related to the actual requirements** of the position

5 C.F.R. § 339.202 (emphasis added). By the terms of this section, OPM cannot just randomly or on an ad hoc basis decide to send an employee to a medical exam. Rather, the agency must establish *in advance* that the position is one which meets certain narrow requirements. That

- 6 -
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

decision must be *documented* and shown that it is *directly related to the actual requirements of the position*. While this definition does not use the phrase "essential function" or the specific definition of "essential function" as set forth in the regulations under the ADA, this language is at least as restrictive as the ADA's definition. *See* 29 C.F.R. § 1630.2(n). Indeed, the requirements that the determination be made in advance and that the justification be documented can be read as far more restrictive (*i.e.*, more protective of the employee) than the ADA. Nothing in the ADA requires an advanced determination that a particular job may require the duties described in Section 339.202. Nothing in the ADA requires an employer to justify in writing its determination that an essential function of a job requires "a certain level of health or fitness." Rather, the ADA only requires the employer to justify – at the time of the examination – that the exam is vital to the business and it is focused on the employee's ability to perform the essential functions of the position.

### b) "Physical Requirements"

The regulation authorizes individual agencies to establish, without OPM approval, physical requirements for specific jobs. Doing so would then authorize that particular agency to require an employee in such a position to undergo medical exam(s) as authorized by Section 339.301.

> Agencies are authorized to establish physical requirements for individual positions without OPM approval **when such requirements are considered essential for successful job performance**. The requirements must be **clearly supported by the actual duties of the position** and **documented** in the position description.

5 C.F.R. § 339.203 (emphasis added). This definition easily incorporates the ADA's requirements – it even uses the phraseology "essential for successful job performance." Thus, a job's physical requirements only justify a medical exam if such requirements are "essential" (*i.e.*, not marginal). And, again, the regulations require advance documentation of these requirements and their relation to the position. This definition is a far cry from Section 43404's unlimited "duties" language.

### c) "Medical Evaluation Program"

Finally, federal agencies may subject employees to periodic medical examinations if the employee works in a job for which a "medical evaluation program" has been established.

> Agencies may establish periodic examination or immunization programs **by written policies or directives** to safeguard the health of employees **whose work may subject them or others to significant health or safety risks due to occupational or environmental exposure or demands**. The need for a medical evaluation program must be **clearly supported by the nature of the work**. The specific positions covered must be identified and the applicants or incumbents **notified in writing** of the reasons for including the positions in the program

29 C.F.R. § 339.205.  Again, this regulation is remarkably specific and limited.  It applies only to job positions that pose "significant health or safety risks" to the employee due to the nature of the specific job.  Again, that designation cannot be arrived at in an *ad hoc* or random manner.  It must be reflected in writing, in advance, with notice provided to the applicants or employees.  Also, the designation must be "vital to the business" in that the agency must show the program is "clearly supported by the nature of the work."

Taken together, the three circumstances approved by OPM for employee medical examinations demonstrate the barebones and unlimited terms of Section 43404.  The CSU Board of Trustees subjected its campuses to none of the specific requirements (*e.g.,* advance designation, written justification, limitation to actual duties or job actually performed) which OPM laid out for federal agencies.  SFSU can find no solace in the comparison between Section 43404 and Section 339.301.  The comparison only reveals the fatal defects of Section 43404.

### C.  SECTION 43404 IS INCONSISTENT WITH THE FEHA

The CSU Board of Trustees is empowered to promulgate regulations only to the extent such regulations are "not inconsistent with the laws of this state."  Cal. Gov. Code § 89030(a).  At the time Section 43404 became effective, there was no state law restricting medical examinations.  This also was the case the last time Section 43404 was amended (in 1984).  As explained in Ellis' motion, Section 43404 became inconsistent with the FEHA in 2000 with the passage of the Poppink Act.  (Plaintiff's Mot. for Partial Sum. Judgment at 6:10-8:25).  In relevant part, the Poppink Act adopted wholesale the medical examination restrictions of the

- 8 -

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

ADA.  *Compare* 42 U.S.C. § 12112(d)(4) *with* Cal. Gov. Code §12940(f)(2); *see also* 2 Cal. Code Regs. § 11071(d)(1).  The California Code of regulations defines the relevant terms – business necessity, job related, and essential functions – in nearly identical ways with the federal regulations and federal case law.  2 Cal. Code Regs. §§ 11065(b), (e), (k).  Thus, all the same reasons demonstrating the inconsistencies between the ADA and Section 43404 apply with equal force to the relationship between the FEHA and Section 43404.  For all those same factors, Section 43404 now violates the standard articulated by the California Legislature in the form of Government Code § 89030(a) and Section 43404 is invalid.

## III.  CONCLUSION

Based on the foregoing, Ellis respectfully requests that this Court deny SFSU's motion and grants her motion for partial summary judgment.

Dated:  November 23, 2015            DUCKWORTH PETERS LEBOWITZ OLIVIER LLP


By:_____/s/ Noah D. Lebowitz_____,
         Noah D. Lebowitz
    Attorneys for Plaintiff Linda Ellis