Noah D. Lebowitz [SBN 194982]
DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, California  94104
Telephone: (415) 433-0333
Facsimile: (415) 449-6556
E-mail:  noah@dplolaw.com

Attorneys for Plaintiff
LINDA ELLIS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

(San Francisco Division)

| | |
|---|---|
| LINDA ELLIS,<br><br>        Plaintiff,<br><br>v.<br><br>SAN FRANCISCO STATE UNIVERSITY,<br>and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. C-15-02273 TEH<br><br>**PLAINTIFF'S NOTICE OF MOTION &<br>MOTION FOR PARTIAL SUMMARY<br>JUDGMENT RE: FIRST & FIFTH<br>CAUSE OF ACTION; MEMORANDUM<br>OF POINTS AND AUTHORITES IN<br>SUPPORT THEREOF**<br><br>Date:        July 11, 2016<br>Time:        10:00 a.m.<br>Courtroom:  2, 17th Floor<br>Judge:       Hon. Thelton E. Henderson |

DUCKWORTH PETERS LEBOWITZ OLIVIER  LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................ 1

II.    STATEMENT OF ISSUES TO BE DECIDED ...................................................... 3

III.   THE CLAIMS AT ISSUE .................................................................................... 4

IV.   UNDISPUTED MATERIAL FACTS .................................................................. 5

  A.  THE MUSEUM STUDIES PROGRAM ................................................... 5

  B.  THE MAY 19 MEETING AND FITNESS FOR DUTY EXAM .................................... 6

  C.  KAUFFMAN DID NOTHING TO VERIFY LUBY'S COMPLAINTS OR
      INVESTIGATE ANY OF THE UNDERLYING FACTS BEFORE REQUIRING ELLIS
      TO UNDERGO THE FITNESS FOR DUTY EXAM ........................................ 7

  D.  KAUFFMAN REFUSED TO CONSIDER ELLIS' REBUTTALS AND REFUSED TO
      MEET WITH HER ...................................................................................... 8

  E.  KAUFFMAN DID NOTHING TO ENSURE THAT THE FITNESS FOR DUTY EXAM
      WAS LIMITED IN SCOPE TO ASSESSING WHETHER ELLIS WAS CAPABLE OF
      PERFORMING THE ESSENTIAL FUNCTIONS OF HER JOB ................................. 10

  F.  SFSU DISCIPLINED, THEN TERMINATED ELLIS BECAUSE SHE REFUSED TO
      ATTEND THE FITNESS FOR DUTY EXAM ........................................... 10

V.    PARTIAL SUMMARY JUDGMENT ................................................................. 11

VI.   LEGAL ARGUMENT ........................................................................................ 12

  A.  THE LEGAL STANDARDS AT ISSUE: THE REHABILITATION ACT & FEHA .... 12

  B.  THE UNDISPUTED FACTS SHOW SFSU CANNOT ESTABLISH THAT
      REQUIRING ELLIS TO UNDERGO A PSYCHOLOGICAL EXAMINATION WAS
      VITAL TO THE BUSINESS OF THE UNIVERSITY .................................. 13

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

i

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

1.   The Court's Inquiry as to "Business Necessity" Is Limited to What Bryan Kauffman Knew by the Conclusion of the May 19 Meeting ........................................................ 13

2.   Kauffman's Decision Was the Definition of Expediency & Convenience, not "Business Necessity" ......................................................................................................... 14

a)   Kauffman's Knowledge Was Based Entirely on What He Was Told by Luby at the May 19 Meeting ...................................................................................................... 15

b)   Kauffman's Exclusive Reliance on Luby's Assertions Was Not Objectively Reasonable .......................................................................................................... 15

c)   SFSU's Failures Are Highlighted in Comparison to USF's .................................. 16

C.   THE UNDISPUTED FACTS SHOW SFSU DID NOTHING TO ENSURE THE MEDICAL EXAM WAS TAILORED TO EVALUATE ELLIS' ABILITY TO CARRY OUT THE ESSENTIAL FUNCTIONS OF HER POSITION ......................................... 19

D.   BECAUSE SFSU CANNOT MAKE OUT ITS BURDEN OF PROOF IN REGARD TO ELLIS' CLAIMS FOR UNLAWFUL MEDICAL EXAM, SFSU'S TERMINATION OF HER EMPLOYMENT IS UNJUSTIFIED AND JUDGMENT MUST BE ENTERED IN ELLIS' FAVOR ......................................................................................................... 21

VII.   CONCLUSION ................................................................................................................ 21

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

# TABLE OF AUTHORITIES

**Cases**

*Brownfield v. City of Yakima*, 612 F.3d 1140 (9th Cir. 2010) ............................................. 12, 14, 16

*Conroy v. New York State Dept. of Correct. Svcs.*, 333 F.3d 88 (2d Cir. 2003).......................... 12

*Cripe v. City of San Jose*, 261 F.3d 877 (9th Cir. 2001)................................................................ 12

*Ellis v. San Francisco State Univ.*, 114 F. Supp. 3d 884 (N.D. Cal. 2015) ("*Ellis I*") ........... 11, 21

*Ellis v. San Francisco State Univ.*, 136 F. Supp. 3d 1140 (N.D. Cal. 2015) ("*Ellis II*")………...12

*Kao v. University of San Francisco*, 229 Cal.App.4th 437 (2014)........................................ 16, 17

*Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619 (6th Cir. 2014)................................ 12, 13, 14

*Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804 (6th Cir. 1999) .................................................. 12

*Tice v. Centre Area Transp. Auth.*, 247 F.3d 506 (3rd Cir. 2001) ................................................. 12

**Statutes**

Cal. Gov. Code § 12940(f).............................................................................................................. 12, 13

42 USC § 12112(d) ........................................................................................................................ 12, 13

**Rules**

Fed. R. Civ. Pro. 56(a) .......................................................................................................................... 11

**Regulations**

2 Cal. Code Regs. § 11065(b) ............................................................................................................... 12

2 Cal. Code Regs. § 11065(e)(1) ........................................................................................................... 13

2 Cal. Code Regs § 11065(e)(3) ............................................................................................................ 13

2 Cal. Code Regs. § 11065(k) ............................................................................................................... 13

2 Cal. Code Regs. § 11071(d)(1) ........................................................................................................... 12

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: FIRST & FIFTH CAUSE OF ACTION

29 CFR § 1630.14(c)................................................................12

29 CFR § 1630.14(c) App..........................................................13

29 CFR § 1630.2(n)..................................................................13

29 CFR § 1630.2(n)(1)..............................................................13

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: FIRST & FIFTH CAUSE OF ACTION

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

## NOTICE OF MOTION & MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 11, 2016, at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 2, 17th Floor, before the Honorable Thelton E. Henderson of the U.S. District Court for the Northern District of California, Plaintiff Linda Ellis will, and hereby does, move the Court for an order for partial summary judgment pursuant to Federal Rule of Civil Procedure 56.  Ellis seeks an Order adjudicating a portion of her First Cause of Action (insofar as it states a claim for unlawful medical examination under the Rehabilitation Act of 1973) and her Fifth Cause of Action (Unlawful Medical Exam pursuant to the California Fair Employment and Housing Act) in her favor on the grounds that the undisputed material facts demonstrate that Defendant San Francisco State University cannot meet its burden of proof on those claims.  *See* First Amended Complaint ("FAC") (Dkt. 14) ¶¶ 65, 66, 68, 71, 92-96.

This motion is based upon this Notice of Motion & Motion, the supporting Memorandum of Points and Authorities, the Declaration of Linda Ellis, the Declaration of Noah D. Lebowitz and any papers filed in reply, the argument of counsel, and all papers and records on file in this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Both federal and state law protect employees from having to submit to unjustified and unlimited medical exams as a condition of employment.  The Americans with Disabilities Act ("ADA") articulated those protections in 1990 and the California Fair Employment and Housing Act ("FEHA") was amended to include identical protections in 2000.  These laws function to, among other things, prevent employers from using medical examinations as a substitute for personnel management.

Just because an employee may be having difficulty at work – even if that difficulty includes problems getting along with coworkers – does not mean an employer may require that

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

employee to undergo a psychological exam.  Rather, the ADA and FEHA require that *before* ordering an employee to undergo a medical exam as a condition of employment, an employer must obtain objective evidence that a medical issue is interfering with the employee's ability to carry out the essential functions of his or her job.  Even then, the employer must ensure that the required medical exam is appropriately tailored to assess whether the employee can perform those essential functions.  In this case, Defendant San Francisco State University ("SFSU" or "the University") failed on both of those requirements.

In December 2014, SFSU ended Plaintiff Linda Ellis' ("Ellis") 27-year career as a professor in the University's Museum Studies Program because she exercised her civil rights and refused to undergo an unjustified, unlimited psychological exam.

In late May 2014, the University sent Ellis a pair of letters informing her that she was being placed on a "paid Temporary Suspension" until such time as she submitted to a so-called fitness-for-duty examination (*i.e.*, medical examination).  These letters came as a complete shock to Ellis.  These letters were signed and transmitted by Bryan Kauffman ("Kauffman"), the Director of Faculty & Staff Relations at SFSU.  Prior to reading these letters, Ellis had never heard of nor communicated with Kauffman. The letters did not even explain to Ellis what type of examination would be required; it was only after she did her own research on the named examiner that she determined it would be a psychological examination.

After reading the letters, Ellis responded to Kauffman, informing him of where his letters were mistaken and had relayed false information of allegations against her.  Kauffman, on behalf of the University, refused to consider Ellis' rebuttal, refused to meet with her, and refused to provide her with any additional information.  Instead, he bluntly told Ellis that the only way for her to return to work would be to undergo the examination and be declared fit to return.  Because she believed the allegations against her were unfounded, and because the University refused to provide her additional information, Ellis declined to attend the examination.  As a result of her refusal, the University began disciplinary proceedings against Ellis.

Over the course of the Summer of 2014, Ellis continued to request additional information and the ability to provide contrary evidence to the University.  Kauffman steadfastly refused to

provide any information or consider any of Ellis' evidence.  Kauffman refused to even meet with Ellis.  As the Summer progressed, so did the University's disciplinary actions against Ellis culminated by the University terminating Ellis' employment effective December 2, 2014.  The stated reason for that termination was Ellis' refusal to submit to the psychological exam.

The undisputed evidence in this case establishes the following:  (1) Kauffman was the decision-maker in this case; (2) Kauffman's only source of information upon which he relied in reaching that decision were the statements of Ellis' colleague Edward Luby ("Luby"); (3) Kauffman did nothing to investigate or verify any of Luby's allegations against Ellis; (4)  Luby's bare allegations fall short of "objective" evidence of need for a psychological examination; (5) Kauffman refused to meet with Ellis or consider any of her rebuttals; and (6) Kauffman did nothing to ensure that the psychological examination was tailored to assess whether Ellis could perform the essential functions of her job.

What these undisputed facts reveal is that instead of relying on objective evidence and making a reasonable determination of need for a medical evaluation, Kauffman reached his determination as a matter of convenience and expediency.  It was easier to have a psychologist deal with the allegations against Ellis than to engage in performance management.  The law does not permit these actions.  In fact, it is a stark example of precisely the types of actions the ADA and FEHA were designed to prevent.

Because the requirement to undergo the unlimited psychological examination was without merit, Ellis was justified in refusing to attend the examination.  Because the University terminated Ellis for that refusal, the termination decision was unlawful.  As a result, Ellis is entitled to judgment in her favor on her claims for unlawful medical examination as set forth in her First and Fifth Cause of Action.

## II.  STATEMENT OF ISSUES TO BE DECIDED

Ellis' First Amended Complaint states claims for unlawful medical exam under both the Rehabilitation Act of 1973 (First Cause of Action) and the FEHA (Fifth Cause of Action).  These laws place the burden on employers to establish that a required medical examination is supported

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: FIRST & FIFTH CAUSE OF ACTION**

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

by a "business necessity" and that such examination is "job related."  To establish business necessity, the employer must show that requiring the examination is "vital to the business", based on objective evidence, and not for sake of convenience or expediency.  To establish that the examination is job related, the employer must produce evidence that the examination was tailored to assess whether the employee could perform the essential functions of her job.

As presented by this motion, the issues to be decided by the Court are whether or not the undisputed facts show that SFSU cannot meet its burden on *either* of these essential elements.  If so, then the University's requirement that Ellis undergo the fitness-for-duty examination as a condition of continued employment was unlawful.  Because the University's stated reason for terminating Ellis was her refusal to submit to the fitness-for-duty exam, if the exam was unlawful, then her termination was similarly unlawful.  Because the undisputed facts show that Ellis' termination was unlawful, she is entitled to judgment as a matter of law.

## III.  THE CLAIMS AT ISSUE

The issue presented to this Court is framed by the pleadings in both the First and Fourth Cause of Action.

The relevant portions of the First Cause of Action are pled as follows:

65.  Plaintiff incorporates by reference paragraphs 1 through 64 as though fully set forth herein.

66. At all times relevant to this Complaint, the Rehabilitation Act of 1973 and its implementing regulations were in full force and effect and binding on the Defendants. Section 504 of the Rehabilitation Act of 1973 (29 USC § 794(d)) incorporates Title I of Americans with Disabilities Act ("ADA") (42 USC §§ 12111-12117).

    *        *        *

68. Pursuant to 42 USC §§ 12112(d)(1),(4), as incorporated by 29 USC § 794(d), it is unlawful for an employer to subject an employee to a medical examination "unless such examination or inquiry is shown to be job related and consistent with business necessity."

    *        *        *

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

71. Beginning in May 2014, the Defendant imposed a requirement on Ellis that she attend a medical examination as a condition of continued employment. The Defendant did not articulate a business necessity for that exam nor did the Defendant restrict the exam to one that would be job related. When Ellis asked for the Defendant to articulate both of these requirements, the Defendant refused. Ellis refused to attend this examination, asserting her rights under the ADA. Ellis' refusal to attend the medical examination was a motivating factor in the Defendant's decision to discipline and then terminate Ellis.

(Declaration of Noah D. Lebowitz in Support of Plaintiff's Motion for Partial Summary Judgment Re: First and Fifth Cause of Action ("Lebowitz Decl.") Exh. A [FAC ¶¶ 65, 66, 68, 71].). The Fifth Cause of Action is pled as follows:

92. Plaintiff incorporates by reference paragraphs 1 through 91 as though fully set forth herein.

93. At all times relevant to this Complaint, the FEHA and its implementing regulations were in full force and effect.

94. Pursuant to Government Code § 12940(f), it is unlawful for an employer to require an employee to undergo a medical or psychological examination unless the employer can demonstrate that the exam is job-related and consistent with business necessity.

95. As set forth above, SFSU required Ellis to undergo a medical or psychological examination which was neither job-related nor consistent with business necessity and thereby violated Section 12940(f).

96. As a direct and proximate result of Defendant's wrongful conduct, Ellis has suffered damages including, but not limited to, a loss of income and benefits, and has further suffered emotional distress and other general damages.

(*Id.* at ¶¶ 92-96.)

## IV.  UNDISPUTED MATERIAL FACTS

### A.  THE MUSEUM STUDIES PROGRAM

Ellis was employed as a professor in SFSU's Museum Studies Program from 1987 through December 2014.  (Lebowitz Decl. Exh. A [FAC ¶¶ 6, 63]; *id.* Exh. B [Answer ¶¶ 6, 63]; Declaration of Linda Ellis in Support of Plaintiff's Motion for Partial Summary Judgment Re: First and Fifth Cause of Action ("Ellis Decl.") ¶ 2 & Exh. A).  The Museum Studies Program is a Master's degree program.  (Ellis Decl. ¶ 3.)  During the time period relevant to this case the

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

Museum Studies Program employed two full-time tenured faculty members (Ellis and Luby) and one staff member (Christine Fogarty).  (*Id.*).  Ellis was the Director of the program from its inception until 2011 when Luby assumed the role.  (*Id.* at ¶ 2).  Paul Sherwin, Dean of the College of Liberal & Creative Arts, was the university administrator in charge of the program.  (*Id.* at ¶ 3).

In the Spring semester 2014, Ellis had three primary job responsibilities:  (1) classroom teaching and student off-campus supervision; (2) advising thesis students; and (3) curator of the University museum.  (*Id.* at ¶¶ 4-9).  She taught two seminar classes and oversaw the internship program as well as the students involved in curating exhibitions at off-campus museums.  She served as primary advisor to seven students and secondary advisor to four students completing their theses.  And, she was responsible for the design and operation of the University museum.  (*Id.*)

## B.  THE MAY 19 MEETING AND FITNESS FOR DUTY EXAM

On May 20, 2014, SFSU transmitted two letters ("the May 20 letters") to Ellis informing her that the University was placing her on "paid Temporary Suspension" and ordering her to undergo a fitness-for-duty examination as a condition of continued employment.  (Lebowitz Decl. Exh. A [FAC ¶ 30]; *id.* at Exh. B [Answer ¶ 30]; *id.* at Exh. C).  The decision to impose this requirement on Ellis was made at the conclusion of a meeting that took place on May 19, 2014 ("the May 19 meeting").  (Lebowitz Decl. Exh. D [Kauffman Depo. 28:1-7, 45:8-46:15).  That meeting took place in a conference room on campus and was attended by the following people:  (1) Bryan Kauffman, SFSU Director of Labor Relations, (2) Dean Sherwin, (3) Associate Dean Susan Shimanoff, (4) Interim Dean Daniel Bernardi, (5) Professor Gail Dawson (Chair of Art Department), and (6) Luby.  (*Id.* at 19:21-24).  The purpose of the meeting was to listen to Luby's concerns about Ellis and decide what, if anything, for the University to do in response to those concerns.  Kauffman agreed to Luby's request for the meeting because:  "I would meet with anybody who asks."  (*Id.* at 16:12-14).

The meeting lasted approximately one hour.  (*Id.* at 20:15-16).  During the course of that meeting, Luby articulated the following complaints about Ellis:

- Ellis was unprofessional in her communication with Luby and Fogarty;

- Ellis was intimidating towards Luby and Fogarty;

- On a single occasion, Ellis told Luby to "shut up" and said "you will get yours";

- Some students made complaints about the timeliness of Ellis' review of theses.

(*Id.* at 24:16-27:7).  In response to Luby's complaints, Kauffman decided that Ellis should be required to undergo a psychological fitness for duty examination.  (*Id.*)  That decision was ratified by Dean Sherwin who was responsible for the budget allocation to pay for the fees associated with the exam.  (*Id.* at 27:8-25, 45:8-46:15).  Both Kauffman's decision and Dean Sherwin's ratification were made during the May 19 meeting and the decisions were final by the conclusion of the meeting.  (*Id.*)

## C.  KAUFFMAN DID NOTHING TO VERIFY LUBY'S COMPLAINTS OR INVESTIGATE ANY OF THE UNDERLYING FACTS BEFORE REQUIRING ELLIS TO UNDERGO THE FITNESS FOR DUTY EXAM

Ellis was not invited to the May 19 meeting.  Kauffman never met or spoke with Ellis while she was employed at SFSU.  (*Id.* at 14:2-25; Ellis Decl. ¶ 10).  At the meeting, Kauffman took Luby at his word. (Lebowitz Decl. Exh. D [Kauffman Depo at 35:4-22]).  He did not take any steps to verify if any of Luby's complaints were factually accurate.  (*Id.* at 35:23-36:16).  At no time did Kauffman ask Ellis for her perspective on the complaints.  (*Id.* at 54:19-55:4).  At no time did Kauffman interview Fogarty to verify Luby's characterizations of her interactions with Ellis.  (*Id.* at 34:15-35:3).  At no time did Kauffman interview any of Ellis' students to verify Luby's characterizations of their complaints about Ellis. (*Id.* at 52:2-14).  Luby did provide Kauffman with some emails which Luby claimed supported his complaints about Ellis, but Kauffman did not receive or review those complaints until *after* the conclusion of the May 19 meeting (*i.e.*, *after* he had already made the decision and had that decision administratively approved by Dean Sherwin).

Q.    When did you ask Dr. Luby to provide you with those e-mails?

A.    During the meeting on May 19.

Q.    And when did he actually provide you those e-mails?

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

A.      I believe it was within a few days.  I don't recall exactly when it was.

Q.      But in any event, it was sometime after the meeting was concluded?

A.      It couldn't have been before.

(*Id.* at 37:19-38:4).

In Kauffman's opinion, it was not his job to investigate the facts underlying Luby's allegations.  (*Id.* at 35:3-36:17; 54:19-55:4, 57:2-58:5).  It was not his responsibility to verify that what Luby was telling him was accurate.  (*Id.*)  In Kauffman's perspective, it was the fitness for duty examiner's job to make that assessment; the fitness for duty exam was the place where Ellis would have the opportunity to provide factual rebuttal to Luby's complaints.  (*Id.*)

## D.  KAUFFMAN REFUSED TO CONSIDER ELLIS' REBUTTALS AND REFUSED TO MEET WITH HER

On May 22, Ellis emailed Kauffman.[1]  (Lebowitz Decl. Exh. E [AGO0065-AGO0066]).  After noting that she assumed there would be a meeting with Kauffman, she stated that Luby's allegations were false.  (*Id.*)  She denied students had suffered any negative effects from her work on their theses, offering to show Kauffman the "several hundred edited thesis chapters" in her archives from the most recent three years.  (*Id.*)  She explained that Luby deliberately sent crucial department communications to an email address he knew she did not regularly use.  (*Id.*)  And, she denied ever saying anything like "you'll get yours," explaining "that phraseology is actually not part of my vocabulary."  (*Id.*)

In reply, Kauffman wrote:  "There is not a meeting with me in this process though."  (*Id.* [AGO0065]).  Kauffman, for his part, refused to consider any of the facts relayed by Ellis and refused to reconsider the decision to require Ellis to undergo the psychological fitness for duty exam.  (Lebowitz Decl. Exh. D [Kauffman Depo 57:2-58:5]).

On May 28, Ellis sent Kauffman a memo entitled "Rebuttal to required 'medical examination' & rebuttal to specific accusations."  (*Id.* at Exh. F).  Ellis opened her four-page memo as follows:  "In further response to your letter of 20 May 2014, I cannot undergo the medical examination scheduled for this Friday because there exist serious flaws and omissions in

---

[1] This was the first time Ellis had ever had any interaction with Kauffman.  Prior to receiving his May 20 letters, she had never heard his name.  (Ellis Decl. ¶ 10).

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

your request."  (*Id.* [PL00059]).  After discussing the concept of informed consent in regard to medical examinations, Ellis noted that the original notice of appointment did not identify the type of exam to be performed.  (*Id.* [PL00059-PL00060]).  It was only after she conducted an independent internet search that she discovered the designated medical examiner – Elliot Henderson, Ph.D. – to be a psychologist from which she inferred the exam would be a psychological examination. (*Id.*)  She then asked:  "exactly how is this psychologist supposed to analyze whether or not I am capable of performing my job duties as a professor and museum curator?"  (*Id.* [PL00060]).  She continued:

> Lastly, the medical examination must be a *business necessity only* to evaluate the performance of *my duties as a professor:  my ability to teach, advise students, evaluate term papers and Master's theses, and conduct research*.  The 'medical examination' is not a 'fishing expedition' to find any medical condition that *may* be contrived against, or even irrelevant to, the performance of my above-described duties.

*Id.* (italics in original).  Ellis concluded this part of the memo asking for specific information to be provided by the University.  (*Id.*)

The next section of Ellis' memo addressed in greater detail her rebuttal to the factual allegations made against her in the May 20 letters.  (*Id.* [PL00060-PL00061]).  She provided more detail about the single verbal interaction with Luby, conceding she told him to "shut up," but again denying saying anything like "you'll get yours."  (*Id.*)  As she put it:  "I never spoke the words, 'you'll get yours,' since this ungrammatical, illogical phrase is not part of my speech pattern."  (*Id.*)

Kauffman replied bluntly.  "I do not intend to provide other documents to you.  The instruction to attend the appointment is one given by an appropriate administrator of the University.  I would recommend compliance with that instruction."  (*Id.* [AGO0069]). Kauffman did not provide additional information because, as he testified, "I am not obligated to."  (Lebowitz Decl. Exh. D [Kauffman Depo 68:15-21].

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

### E. KAUFFMAN DID NOTHING TO ENSURE THAT THE FITNESS FOR DUTY EXAM WAS LIMITED IN SCOPE TO ASSESSING WHETHER ELLIS WAS CAPABLE OF PERFORMING THE ESSENTIAL FUNCTIONS OF HER JOB

Shortly after the conclusion of the May 19 meeting, Kauffman directed Diane Rosenfield to contact Dr. Henderson to set up the fitness for duty exam. (*Id.* at 39:11-40:2). Kauffman selected Dr. Henderson because he is the psychologist whom the University hires for all of their psychological fitness for duty exams. (*Id.* at 38:25-39:10; Lebowitz Decl. Exh. G [Henderson Depo 29:1-14 (Dr. Henderson had performed fitness for duty exams for 18 SFSU employees over a five-year period prior to Ellis' referral).].). The original appointment for the exam was set for May 30. (Lebowitz Decl. Exh. D [Kauffman Depo 72:15-18].).

At no time did Kauffman take any steps to communicate any limitations on the scope of the exam to Dr. Henderson. (*Id.* at 40:3-41:7). At no time did Kauffman do anything to learn any facts about Ellis' job duties. (*Id.* at 43:17-45:4). Kauffman did not know, and did nothing to learn, what type of program the Museum Studies Program was – i.e., graduate or undergraduate. (*Id.*) Kauffman did not know, and did nothing to learn, how many classes Ellis taught. (*Id.*) Kauffman did not know, and did nothing to learn, how many students Ellis supervised. (*Id.*) Because he did not know any of these facts, Kauffman did not communicate any of these facts to Dr. Henderson. (*Id.*)

### F. SFSU DISCIPLINED, THEN TERMINATED ELLIS BECAUSE SHE REFUSED TO ATTEND THE FITNESS FOR DUTY EXAM

Ellis did not attend the scheduled fitness-for-duty exam. (Lebowitz Decl. Exh. A [FAC ¶ 51]; *id.* at Exh. B [Answer ¶ 51].). As a result, SFSU issued a formal Notice of Intent to impose disciplinary action against Ellis: Three day suspension. (*Id.* at Exh. A [FAC ¶ 55]; *id.* at Exh. B [Answer ¶ 55].). SFSU articulated its "Reasons for Discipline" as follows:

> The California Code of Regulations states that an employee may be required to submit to an examination to evaluate whether the employee is able to perform the duties of the position.

(*Id.* at Exh. A. [FAC ¶ 57]; *Id.* at Exh. B [Answer ¶ 57].). SFSU then set up another appointment for Ellis to undergo the fitness-for-duty exam, and again Ellis refused to attend as a continued violation of her civil rights. (*Id.* at Exh. A [FAC ¶¶ 58-61]; *id.* at Exh. B. [Answer ¶¶ 58-61].).

As a result, SFSU issued a "Notice of Intent of Dismissal."  (*Id.* at Exh. A. [FAC ¶62]; *id.* at Exh. B. [Answer ¶ 62].).  In that notice, the University set forth its basis for imposition of the dismissal as follows:

> Failure to submit to a medical examination by a physician as determined necessary by San Francisco State University is a violation of § 43404 of the California Code of Regulations Title X [*sic*].  Your repeated failure to attend the Fitness for Duty evaluations, *inter alia*, amounts to unprofessional conduct and failure or refusal to perform the normal and reasonable duties of the position, as those terms are used in subdivisions (b) and (f) of the California Education Code §89535.

*Id.*  SFSU subsequently confirmed its decision to terminate Ellis' employment based on the reasons set forth in the Notice of Intent, effective December 2, 2014.  (*Id.* at Exh. A. [FAC ¶ 63]; *id.* at Exh. B [Answer ¶ 63].)

## V.   PARTIAL SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment on claims, defenses, or issues.  Fed. R. Civ. Pro. 56(a).  Under that section, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*   This motion presents the Court with just such a scenario.

The issue described in this motion is framed by the First and Fifth Cause of action in the FAC.  SFSU bears the burden of proof on each of the elements central to the claims framed by this motion (*i.e.*, that the University had a business necessity to require the medical exam *and* that the required exam was job-related).  *See Ellis v. San Francisco State Univ.*, 114 F. Supp. 3d 884, 889 (N.D. Cal. 2015) ("*Ellis I*").  The material facts relevant to those legal claims are undisputed.  Those undisputed facts demonstrate that SFSU *cannot* meet its burden.  Ellis is entitled to judgment on those claims as a matter of law.

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

## VI.  LEGAL ARGUMENT

### A.  THE LEGAL STANDARDS AT ISSUE: THE REHABILITATION ACT & FEHA

Title I of the ADA[2] as well as the FEHA impose identical restrictions on employers' ability to require employees to undergo medical examinations.  In particular, an employer may only require such exams if "shown to be job related and consistent with business necessity."  42 USC § 12112(d)(1),(4); 29 CFR § 1630.14(c); Cal. Gov. Code § 12940(f); 2 Cal. Code Regs. § 11071(d)(1).  The laws define "business necessity" as something that is "vital to the business." *Conroy v. New York State Dept. of Correct. Svcs.*, 333 F.3d 88, 97-98 (2d Cir. 2003); 2 Cal. Code Regs. § 11065(b).  Various characteristics of this standard bear directly on this case.  For instance, this standard "is quite high, and is not to be confused with mere expediency."  *Cripe v. City of San Jose*, 261 F.3d 877, 890 (9th Cir. 2001); *see also Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir. 2014).  Moreover, the standard "is objective."  *Brownfield v. City of Yakima*, 612 F.3d 1140, 1146 (9th Cir. 2010) (citing *Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 518 (3rd Cir. 2001)).  Most importantly, "*[t]he employer bears the burden of demonstrating business necessity*."  *Id.* (citations omitted) (emphasis added); *see also Ellis I*, 114 F. Supp. 3d at 888.  The Ninth Circuit explained that an employer must point to

> "*significant evidence* that could cause *a reasonable person* to inquire as to whether an employee is still capable of performing his job.  An employee's behavior *cannot be merely annoying or inefficient* to justify an examination; rather, there must be *genuine reason* to doubt whether that employee can 'perform job-related functions.'  . . . [A] fitness-for-duty exam . . . is not an excuse for every wide-ranging assessment of mental or physical debilitation that could conceivably affect the quality of an employee's job performance."

*Brownfield*, 612 F.3d at 1146 (quoting *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 811-12 (6th Cir. 1999) (emphasis added)).

Even if an employer proves there is objective evidence that requiring an employee to undergo a medical exam is vital to the business, that is not the end of the inquiry.  The employer must also prove that the required exam is "job related."  42 USC § 12112(d)(4); Cal. Gov. Code

---

[2] Section 504 of the Rehabilitation Act of 1973 directly incorporated the standards of Title I of the ADA, including the medical exam restrictions.  29 USC § 794(d); *see Ellis v. San Francisco State Univ.*, 136 F. Supp. 3d 1140 (N.D. Cal. 2015) ("*Ellis II*").

§ 12940(f); *Kroll*, 763 F.3d at 623 (employer's burden to prove the exam is job related).  To be job related, an exam must be "tailored to assess the employee's ability to carry out the essential functions of the job or to determine whether the employee poses a danger to the employee or others due to disability."  2 Cal. Code Regs. § 11065(k). Aside from some minor wording differences, the California regulations definition of "essential job functions" is identical to the definition found in the federal regulations.  *Compare id.* at § 11065(e)(1) *with* 29 CFR § 1630.2(n).  The California regulations further define the distinction between "essential" functions and those that are non-essential, referred to in the regulations as "marginal functions."[3]

> "Essential functions" do not include the marginal functions of the position. "Marginal functions" of an employment position are those that, if not performed, would not eliminate the need for the job or that could be readily performed by another employee or that could be performed in an alternative way.

*Id.* at § 11065(e)(3).  In other words, the employer has a responsibility to ensure that the exam being administered actually evaluates the employee's ability to carry out her essential job functions.  As explained by the EEOC, "[t]his provision permits employers to make inquiries or require medical examinations (fitness for duty exams) when there is a need to determine whether an employee is still able to perform *the essential functions of his or her job*."  29 CFR § 1630.14(c) App. (emphasis added).  A job function may be determined to be "essential" "because the reason the position exists is to perform that function. . . .[or] . . . because of the limited number of employees available among whom the performance of that job function can be distributed . . . [or] . . . the function may be highly specialized. . . ."  29 CFR § 1630.2(n).

## B.  THE UNDISPUTED FACTS SHOW SFSU CANNOT ESTABLISH THAT REQUIRING ELLIS TO UNDERGO A PSYCHOLOGICAL EXAMINATION WAS VITAL TO THE BUSINESS OF THE UNIVERSITY

### 1.  The Court's Inquiry as to "Business Necessity" Is Limited to What Bryan Kauffman Knew by the Conclusion of the May 19 Meeting

In analyzing SFSU's ability to make out its burden of proof in this case, the Court is limited in its inquiry to the knowledge of the decision-maker at the time the decision was made

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

---

[3] The federal regulations also use the phrase "marginal functions" but do not define the phrase beyond using it as the counter to "essential functions."  *See* 29 CFR § 1630.2(n)(1).

to require the employee to undergo the medical exam as a condition of continued employment. *Kroll*, 763 F.3d at 623 ("the individual who decides to require a medical examination must have a reasonable belief based on objective evidence that the employee's behavior threatens a vital function of the business." (citations omitted).)  In other words, the question is:  What did the decision-maker know, and when did he know it?  *Id.* ("the decision to require a medical examination was justified only if it was reasonably based on objective evidence known to [the decision-maker].); *see also id.* at 625 (the alleged conduct "may provide a basis for compelling a medical examination only to the extent [the decision-maker] was aware of it.").

The undisputed facts in this case establish the following:  Bryan Kauffman was the decision-maker in this case and he made that decision by the conclusion of the May 19 meeting. (Lebowitz Decl. Exh. D [Kauffman Depo 24:16-27:25, 45:8-46:15]).  Kauffman testified that his decision was ratified and approved contemporaneously by Dean Sherwin.  (*Id.*)  As Kauffman explained, he made the substantive decision to require Ellis to attend the fitness for duty exam and Dean Sherwin approved the budget spend to enable that exam to take place. (*Id.*)  Both of these decisions were complete by the end of the May 19 meeting.  (*Id.*)

As a result, the Court's inquiry is limited to what Kauffman knew by the conclusion of the May 19 meeting.

### 2. Kauffman's Decision Was the Definition of Expediency & Convenience, not "Business Necessity"

A decision to send an employee to a fitness for duty exam is not lawful if it is reached as a "'mere expediency.'"  *Brownfield,* 612 F.3d at 1146 (quoting *Cripe*, 261 F.3d at 890.)  Nor may it be justified as a matter of convenience.  *Kroll*, 763 F.3d at 623 (citing *Conroy*, 333 F.3d at 97).  Nor may it be justified if the employee's behavior is merely annoying or inefficient. *Brownfield,* 612 F.3d at 1146 (quoting *Sullivan,* 197 F.3d at 811-12.)  The decision-maker "must have a reasonable belief based on objective evidence that he employee's behavior threatens a vital function of the business."  *Kroll,* 763 F.3d at 623 (citations omitted).  In short, a fitness for duty exam cannot serve as a substitute for normal employee performance management.

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

- 14 -

### a) Kauffman's Knowledge Was Based Entirely on What He Was Told by Luby at the May 19 Meeting

Luby was the only attendee at the May 19 meeting with any personal knowledge of the incidents of Ellis' alleged conduct.  Based exclusively on the allegations articulated by Luby during the meeting, Kauffman decided to require Ellis to attend the fitness for duty evaluation.  Kauffman took no steps to verify any of Luby's allegations.  He did not interview Ellis nor give her any opportunity to respond to the requirement that she attend the exam.  He did not interview Fogarty – the only other SFSU employee who might have personal knowledge of any of the alleged incidents.  He did not interview any students to explore the basis for any complaints.  Instead, he relied exclusively on Luby.  (Lebowitz Decl. Exh. D [Kauffman Depo 35:13-15 ("I basically take the word of the individual bringing the issue to me. . .").].  When Ellis did provide factual rebuttals to Luby's allegations, Kauffman declined to consider them. (*See supra* § IV.D).  Instead, it was Kauffman's position that it was not his job to evaluate the facts; that was the psychologist's job.    (Lebowitz Decl. Exh. D [Kauffman Depo 35:8-22].).

The law requires the *employer* to reach a reasonable conclusion based on objective evidence.  By definition, relying on a single source for allegations such as those being made by Luby is not reasonable.  Luby was not the primary source for allegations about interactions with Fogarty nor for allegations about student complaints.  Any decision-maker acting reasonably would take steps to seek out those primary sources of information and verify the second-hand statements made by Luby.  Any decision-maker acting reasonably would not kick the can down the road and abdicate his responsibility to the psychologist performing the fitness for duty examination.

### b) Kauffman's Exclusive Reliance on Luby's Assertions Was Not Objectively Reasonable

The sum total of what Kauffman alleged against Ellis is as follows:

- Ellis was unprofessional in her communication with Luby and Fogarty;
- Ellis was intimidating towards Luby and Fogarty;
- On a single occasion, Ellis told Luby to "shut up" and said "you will get yours";
- Some students made complaints about the timeliness of Ellis' review of theses.

- 15 -

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

Even if fully credited, Luby's complaints do not give rise to objective evidence of a need for a psychological examination.  Luby's complaints can be broken down into two categories: interpersonal relations among employees, and workflow management.  When examined, the interpersonal interactions described to Kauffman at the May 19 meeting can fairly be characterized as, at most, "merely annoying."  And, the timeliness issues can fairly be characterized as, at most, "inefficient."  The Ninth Circuit has held that neither of these factors rise to the level of business necessity.  *Brownfield*, 612 F.3d at 1146.

Taken separately, these issues are nothing more than run-of-the-mill, day-to-day issues that arise in the workplace.  Taken together, they indicate nothing more than a potentially dysfunctional workplace where employees do not get along with one another.  The complaints raised by Luby at the May 19 meeting should have resulted in routine performance counseling, at most.  SFSU had the resources available to engage in such counseling, but failed to draw on those resources. (Lebowitz Decl. Exh. D [Kauffman Depo 21:22-23:11].)  Instead, it relied on expediency and convenience to address the issues raised by Luby.  This, the law does not allow.

### c)  SFSU's Failures Are Highlighted in Comparison to USF's

SFSU's failure to consult with percipient witnesses and subject-matter-knowledgeable people prior to referring Ellis to a fitness for duty exam is a fundamental error.  Contrast SFSU's actions in this case with the actions of the university across the City.  The case of *Kao v. University of San Francisco*, 229 Cal.App.4th 437 (2014) serves as a prime example of what SFSU could have – and should have – done in this case in order to meet its burden of establishing a business necessity for referring Ellis for the fitness for duty exam.  In that case, the university received multiple complaints from multiple faculty members over the course of a semester about Professor Kao's increasingly hostile and frightening behavior.  *Id.* at 440-42.  The university opened an investigation and interviewed each of the faculty members who had such experiences with Professor Kao.  *Id.* at 442-44.  Then, the university consulted with a psychologist to obtain "'some input on an educational level about markers for violence or things to look for that might suggest an escalation of hostilities . . . and how best for the institution to

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

1   respond.'" *Id.* at 443.  The psychologist then met with the Assistant Vice President and the Dean

2   to discuss the issues.  *Id.*  The administration continued its investigation, meeting with a forensic

3   psychologist who recommended a fitness for duty exam.  *Id.*

4          Even at that point, however, the university had not made its final decision.  Rather, the

5   university held a meeting with Professor Kao and his attorney.  *Id.* at 444.  In that meeting, the

6   university officials gave Professor Kao a letter detailing much of what they had discovered in the

7   course of their investigation. *Id.* at 444-45. They informed Professor Kao that the university was

8   *considering* referring him to a fitness for duty exam, but had not yet made a final decision. *Id.*

9   Instead, the university wanted to hear from Professor Kao before making that final

10   determination.  *Id.*  The university administration followed up that meeting with an email

11   inviting, yet again, Professor Kao to provide "'any information you believe the University should

12   consider in making its decision on this matter. . .'"  *Id.* at 445 (quoting trial testimony).

13   Professor Kao declined to provide any information.  *Id.* The university *then* made the decision to

14   require Professor Kao to undergo a fitness for duty exam.  *Id.*  After several months of back and

15   forth between the university and Professor Kao's attorney during which time Professor Kao

16   refused to attend the fitness for duty exam, the university terminated his employment.  *Id.* at 445-

17   48.

18          Professor Kao filed suit challenging the lawfulness of the fitness for duty exam.  A jury

19   found in the university's favor and that verdict was upheld by the appellate court.

20          The *Kao* case lies in stark contrast to the present case.  Most importantly, the steps taken

21   by USF in making sure that it relied on reasonable, objective evidence in reaching its decision to

22   refer a faculty member for a fitness for duty exam is 180-degrees from what SFSU did in this

23   case.  USF conducted interviews with all percipient witnesses; SFSU relied on the hearsay

24   allegations of a single faculty member and failed to interview any other possible witnesses.  USF

25   consulted with two different outside experts to review the facts and get advice on how to

26   approach the situation; SFSU consulted with nobody despite having Dr. Henderson at their

27   disposal.  USF interviewed Professor Kao before making its decision; SFSU refused to meet with

28

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

1  Ellis before or after making its decision.[4]  USF provided Professor Kao with a letter detailing the

2  facts of the allegations against him and asked for him to provide any information that might shed

3  a different light on their understanding of the facts; SFSU refused to consider the contrary facts

4  submitted by Ellis describing the false statements made by Luby.  USF provided Professor Kao

5  with information about the scope of the exam; SFSU refused to provide Ellis with any

6  information about the scope of the exam, even though Dr. Henderson would have been happy to

7  have done so.  In the end, the *Kao* case serves as an example of how an employer should go

8  about meeting its obligations under the law.

9         What's more, Kauffman had subject-matter expertise at his disposal, but chose not to

10  utilize it.  In particular, he could have called on Dr. Henderson to ask for his input in regard to

11  the decision to refer Ellis for a fitness for duty exam.  SFSU had used Dr. Henderson at least 18

12  times prior to perform fitness for duty evaluations.  (Lebowitz Decl. Exh. G [Henderson Depo

13  29:1-14].)  In regard to other employers, Dr. Henderson has been consulted prior to a fitness for

14  duty referral in order to provide his professional opinion as to whether or not the employee

15  should be referred.  (*Id.* at 33:12-35:11).

16         Q.   And in those circumstances where you have been consulted
17  beforehand in the process that you have described, have you ever concluded that
    [a] fitness-for-duty exam is not warranted?

18         A.   Yes.

19         Q.   And in your experience has the employer followed that advice?

20         A.   Yes.

21

22  (*Id.* at 35:5-11).  Instead of calling on this expert resource, Kauffman merely passed along the

23  entire decision.  (Lebowitz Decl. Exh. C [Kauffman Depo 35:4-22].).  If this testimony does not

24  demonstrate convenience and expediency, then it is difficult to imagine what would satisfy that

25  definition.

26

27  _____
    [4] This refusal is especially stark given Kauffman's sworn testimony:  "I'll meet with
28  anybody who asks."  (Lebowitz Decl. Exh. D [Kauffman Depo 16:12-14).

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

### C.  THE UNDISPUTED FACTS SHOW SFSU DID NOTHING TO ENSURE THE MEDICAL EXAM WAS TAILORED TO EVALUATE ELLIS' ABILITY TO CARRY OUT THE ESSENTIAL FUNCTIONS OF HER POSITION

It is undisputed that SFSU did absolutely nothing to ensure that the medical exam was tailored to evaluate Ellis' ability to carry out the essential functions of her position.  The only substantive communication – i.e., other than scheduling messages – that took place between SFSU and Dr. Henderson was the single phone call and email from Diane Rosenberg in SFSU human resources.  (Lebowitz Decl. Exh. G [Henderson Depo 26:15-27:2]).  The entire substance of the phone call was Rosenberg telling Dr. Henderson "[t]hat they wanted to set up a fitness-for-duty evaluation" and "[t]hat they would be electronically sending the information." (*Id.* at 27:10-15).  The entire conversation took "[l]ess than one minute." (*Id.* at 27:7-9).  The email from Rosenberg was nothing more than a transmission message, attaching Kauffman's May 20 letter to Ellis, the emails supplied to Kauffman by Luby *after* the May 19 meeting, one page containing some handwritten notes from Luby, and a medical release form.  (Lebowitz Decl. Exh. D [Kauffman Depo 60:13-22]).  These documents are a far cry from what Dr. Henderson typically receives from employers referring an employee for a fitness for duty exam.  More typically, Dr. Henderson receives documentation from the employer describing what he termed "critical job functions." (*Id.* at Exh. G [Henderson Depo 16:10-17:8]).

During the Spring semester of 2014, Ellis had three core functions:  classroom teacher and internship oversight, thesis advisor, and museum curator.  (Ellis Decl. ¶¶ 4-9).  As noted above, Kauffman did nothing at all to learn anything about Ellis' job duties.  *See supra* § IV.E.  He had no idea how many classes she taught, how many students she supervised, etc.  Kauffman did not even know if the Museum Studies Program was a graduate or undergraduate program.  Being in the dark about Ellis' actual job duties, himself, he obviously could not – and did not – give any such information to Dr. Henderson.

> Q.   So did anyone -- did you learn from any source as to what Professor Ellis' job duties were?
>
> A.   No.

(Lebowitz Decl. Exh. G [Henderson Depo 32:16-18]).

- 19 -

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

It is further undisputed that SFSU did nothing to ensure that the fitness for duty exam was tailored in any way.  In Kauffman's view, that was not part of his job.  Even though Ellis specifically asked Kauffman to inform her what the scope of the exam would be and to ensure that it was tailored to her actual job responsibilities, Kauffman still did nothing.  Had he inquired, Dr. Henderson would have willingly provided such information.

Q.   At any point did anyone from San Francisco State University ever ask you what the scope of your exam would be in regard to Professor Ellis?

A.   No.

Q.   If they had asked you that question, would you have any problems outlining what your exam would entail?

MR. GOWE:  Objection, calls for speculation, incomplete hypothetical.

THE WITNESS:  Obviously I would have needed to know what the issues are.  Then I would not have a problem telling them what I would do.

MR. LEBOWITZ:  Q.  And would you have had a problem telling Professor Ellis before she arrived here what the scope of the exam would entail?

A.   No.

Q.   So if San Francisco State University had contacted you and said Professor Ellis is concerned with the scope of the exam and would like to know what the exam would entail, would you have any problem communicating a response to that?

MR. GOWE:  Objection, calls for speculation, incomplete hypothetical.

THE WITNESS:  No, I would not have had a problem.

(*Id.* at 36:12-37:11).

We could find no authority addressing square-on an employer's obligation to ensure a medical examination is job related.  The law *is* clear, however, that the employer bears the burden to prove that such examination meets the legal standard.  In other words, the law requires that employer must *do something* to make sure the medical exam is appropriately tailored to the essential functions of the employee's job.  Here, it is undisputed that SFSU did *nothing*.  Indeed, Kauffman purposefully did nothing.  According to Kauffman, that's not his job.  Federal and state law hold otherwise.  Those laws place a firm duty on employers to take affirmative steps to

- 20 -

ensure that if they are requiring an employee to undergo a medical examination as a condition of continued employment that any such exam is properly tailored.  In this case, SFSU knowingly and purposefully wiped its hands of any such duty.  If the University is permitted to escape liability in such a case, the law has no purpose.

### D.  BECAUSE SFSU CANNOT MAKE OUT ITS BURDEN OF PROOF IN REGARD TO ELLIS' CLAIMS FOR UNLAWFUL MEDICAL EXAM, SFSU'S TERMINATION OF HER EMPLOYMENT IS UNJUSTIFIED AND JUDGMENT MUST BE ENTERED IN ELLIS' FAVOR

Again, it is SFSU's burden to prove *both* that the medical examination in question was justified by a business necessity *and* that it was job related.  If the University fails to meet that burden on *either* of those elements, it cannot prevail and Ellis' claims are established.  If Ellis' claims for unlawful medical exam are established, SFSU was unjustified in terminating Ellis' employment.

> In short, if Defendant shows that the demand for a medical examination was job-related and consistent with a business necessity, then it was lawful for it to terminate Plaintiff's employment after she refused to attend the examination. On the other hand, if Defendant does not show that the examination was job-related and consistent with a business necessity, then Plaintiff was entitled to refuse to attend it, and it was unlawful for Defendant to terminate her employment.

*Ellis I,* 114 F. Supp. 3d at 889.  The undisputed facts establish that SFSU cannot meet its burden. As a result, Ellis "was entitled to refuse to attend" the fitness for duty exam and the termination of her employment was "unlawful."  *Id.*  Ellis is entitled to judgment on (1) the portion of her First Cause of Action alleging unlawful medical examination under the Rehabilitation Act of 1973 and (2) her Fifth Cause of Action alleging the same claim under the FEHA.  Trial on these claims will be required only to determine the appropriate amount of damages.

## VII.    CONCLUSION

SFSU bears the burden of demonstrating that it had a business necessity to require Ellis to undergo a psychological fitness for duty exam as a condition of continued employment *and* that the fitness for duty exam was job-related.  Because the undisputed facts demonstrate that SFSU cannot meet its burden on either or both of these essential elements judgment must be

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

entered in Ellis' favor, as a matter of law, on the unlawful medical exam claims set forth in her

First and Fifth Cause of Action.

Dated:  May 27, 2016          DUCKWORTH PETERS LEBOWITZ OLIVIER LLP


By:____/s/ Noah D. Lebowitz_____,
Noah D. Lebowitz
Attorneys for Plaintiff Linda Ellis

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104