UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LINDA ELLIS,

        Plaintiff,

    v.

SAN FRANCISCO STATE UNIVERSITY,

        Defendant.

Case No. 15-cv-02273-TEH

**ORDER DENYING CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

Before the Court are Plaintiff's motion and Defendant's cross-motion for partial summary judgment as to Plaintiff's First and Fifth Causes of Action. Having carefully considered the parties' written arguments, the Court found this matter suitable for resolution without oral argument and vacated the hearing. *See* Civil L.R. 7-1(b). For the reasons set forth below, the Court now DENIES both parties' motions.

**BACKGROUND** [1]

Plaintiff Dr. Linda Ellis was employed in Defendant San Francisco State University's Museum Studies Program from 1987 to 2014. First Amended Complaint ("FAC") ¶¶ 6, 63, Ex. A to Lebowitz Decl. (Docket No. 46). Dr. Ellis was employed as Director of the Museum Studies Program from 1987 to 2011, then in 2011 she was employed as a professor and Senior Curator of the University Museum. Ellis Decl. ¶ 2 (Docket No. 45). The Museum Studies Program is a Master's degree program, and is a lightly staffed program – during Dr. Ellis's tenure, the program employed two full-time faculty members (Dr. Ellis and Dr. Edward Luby) and one staff member (Ms. Christine Fogarty). *Id.* ¶ 3.

---

[1] The following facts are undisputed unless otherwise indicated.

On May 19, 2014, several employees of San Francisco State University (the "University") conducted a meeting (hereinafter, the "May 19 meeting"), including Mr. Bryan Kauffman, Director of Labor Relations, and Dr. Luby, among others. Kauffman Depo. at 16, Ex. D to Lebowitz Decl. Dr. Ellis did not attend the meeting, nor did Ms. Fogarty. Luby Depo. at 90-92, Ex. C. to Gowe Decl. (Docket No. 47-1). Dr. Luby had requested the meeting, citing concerns about an "employee relations issue." Kauffman Depo. at 16. The meeting lasted approximately one hour, and before the conclusion of the meeting Mr. Kauffman recommended that the University direct Dr. Ellis to undergo a fitness for duty evaluation. *Id*. at 27. Dean Sherwin approved the recommendation at the conclusion of the meeting. *Id*. Shortly after the meeting, Mr. Kauffman directed a staff member to contact Dr. Eliot Henderson – the psychologist whom the University hires for all psychological fitness for duty evaluations – to schedule Dr. Ellis's evaluation. *Id*. at 39; Kauffman Depo. at 39, Ex. A to Gowe Decl.

On May 20, 2014, the University sent two letters to Dr. Ellis. One letter informed her of her placement on "paid Temporary Suspension," and directed her to undergo a fitness for duty evaluation, to be scheduled by the University. Ex. C to Lebowitz Decl. The other letter summarized the "strong and compelling evidence" which was the basis for the decision to require that Dr. Ellis attend a fitness for duty evaluation. *Id*. There were four main pieces of "evidence" referenced in the letter:

1. On one occasion, Dr. Ellis engaged in a verbal altercation with Dr. Luby, during which she told him to "shut up" and stated in a threatening manner "you will get yours;"
2. Information was received about Dr. Ellis's "unprofessional and inappropriate interactions with staff members in the department;"
3. Student feedback over the past two years reflected that Dr. Ellis did not provide timely feedback on student theses, and that as a result, Dr. Luby and others needed to intervene so that the students would be able to graduate on time; and

4. Dr. Ellis was unresponsive to student communication, and Dr. Ellis further alleged that she did not receive information provided by the department, when such information was, in fact, delivered via email.

*Id.*

On May 22, 2014, Dr. Ellis emailed Mr. Kauffman in an attempt to refute the allegations in the letter, and stating that she would like to have her attorney present at any meeting with Mr. Kauffman. Ex. E to Lebowitz Decl. Mr. Kauffman responded that there would be no meeting with him, and instead Dr. Ellis would be meeting with a "mental health professional." *Id*. Dr. Ellis continued to attempt to rebut the "evidence" against her, by way of a memorandum on May 28, 2016, in which she requested documentation and more specific information about the accusations against her. Ex. F to Lebowitz Decl. Mr. Kauffman responded briefly via email, refusing to provide any additional information. *Id.*

Dr. Ellis refused to attend the scheduled fitness for duty evaluation. FAC ¶ 51, Ex. A to Lebowitz Decl. The University responded by issuing a Notice of Intent to place Dr. Ellis on a three-day suspension, based on her non-compliance with the scheduled evaluation. *Id*. ¶ 55. Another evaluation was scheduled, which Dr. Ellis again refused to attend. *Id*. ¶ 58-61. The University responded by issuing a Notice of Intent of Dismissal for failure to submit to a medical examination. *Id*. ¶ 62. Dr. Ellis was subsequently terminated, effective December 2, 2014. *Id*. ¶ 63.

The instant motions for partial summary judgment ask the Court to decide whether, as a matter of law, the fitness for duty evaluation ordered by the University was lawful under the Rehabilitation Act of 1972 and the California Fair Employment and Housing Act. *See* Pl.'s Mot. (Docket No. 44); Def.'s Mot. (Docket No 47). The motions for partial summary judgment implicate the First and Fifth Causes of Action in Plaintiff's FAC. *See* FAC ¶¶ 68, 94.

///

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The Court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party. *Id.* at 255. The Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

A party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). However, on an issue for which its opponents will have the burden of proof at trial, the moving party can prevail merely by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden, the burden shifts to the opposing party, who must "set out specific facts showing a genuine issue for trial" to defeat the motion. Fed. R. Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 256.

At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). If evidence produced by the parties is conflicting, the Court must assume the truth of the nonmoving party's evidence with respect to that fact. *Id.*

///

**DISCUSSION**

**I.   Triable Issues of Material Fact Exist as to Whether Defendants Violated the Applicable Statutes**

Plaintiff's FAC alleges violations of the Rehabilitation Act of 1972 and the California Fair Employment and Housing Act ("FEHA") in the First and Fifth Causes of Action, respectively. FAC at 10, 13 (Docket No. 14). Plaintiff's contention is that Defendant impermissibly ordered a psychological fitness for duty evaluation in violation of the Rehabilitation Act and FEHA. Section 504 of the Rehabilitation Act[2] and FEHA impose restrictions on employers requiring employees to undergo fitness for duty evaluations. Namely, the evaluation must be "shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(1), (4) (ADA); *see also* 29 C.F.R. § 1630.14(c) (regulations to implement ADA); Cal. Gov. Code § 12940(f)(2) (FEHA); 2 Cal. Code Regs. § 11071(d)(1) (regulations to implement FEHA). At issue is whether the psychological fitness for duty evaluation Dr. Ellis was required to attend satisfied the "business necessity" and "job relatedness" requirements of the pertinent statutes and regulations.

*A.   Whether Dr. Ellis's fitness for duty examination was ordered to address a business necessity*

The first hurdle the University must overcome is demonstrating that there was a "business necessity" for the examination, meaning it would serve a goal that is "vital to the business." *Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 97 (2d Cir. 2003). The business necessity standard "is quite high, and is not to be confused with mere expediency." *Cripe v. City of San Jose*, 261 F.3d 877, 890 (9th Cir. 2001). The Ninth Circuit has cautioned courts to "guard against the potential for employer abuse of such exams." *Brownfield v. City of Yakima*, 612 F.3d 1140, 1146 (9th Cir. 2010). Thus, it is the

---

[2]   For purposes of assessing fitness for duty evaluations, the applicable Rehabilitation Act and the Americans with Disabilities Act ("ADA") are interchangeable, as the Rehabilitation Act incorporates Title I of the ADA.

5

University's burden in this case to show that it had "significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job." *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 811 (6th Cir. 1999); *see also Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir. 2014) (decision maker ordering examination must have a "reasonable belief based on objective evidence that the employee's behavior threatens a vital function of the business").

Plaintiff argues that Mr. Kauffman's decision was based on a desire for "expediency and convenience;" not a business necessity. Pl.'s Mot. at 14. Plaintiff argues that the allegations presented to Mr. Kauffman by Dr. Luby, and cited in the Letter of Intent sent to Dr. Ellis, amounted to nothing more than annoyances and inefficiencies, related to interpersonal relations among employees and workflow management issues. *Id*. at 16. Plaintiff argues that the "complaints raised by [Dr.] Luby at the May 19 meeting should have resulted in routine performance counseling, at most." *Id*. Plaintiff further argues that Dr. Luby's allegations were unsubstantiated and unreliable, and that Mr. Kauffman should have personally investigated the allegations prior to ordering the examination. *Id*. at 15.

Plaintiff directs the Court's attention to *Kao v. University of San Francisco*, 229 Cal. App. 4th 437 (2014). In *Kao*, the University of San Francisco received multiple complaints from various faculty members about Professor Kao's "disturbing" and "frightening" hostile behavior. 229 Cal. App. 4th at 440-42. The University of San Francisco launched an investigation into the allegations, which lasted over five months and involved meetings with the complaining faculty members, as well as a forensic psychologist and a forensic psychiatrist specializing in fitness for duty evaluations, to determine the best course of action. *Id*. at 443-44. University of San Francisco staff met with Professor Kao and his attorney twice during the process, and considered rebuttal information provided by Professor Kao, but ultimately placed Professor Kao on a leave of absence pending a fitness for duty evaluation. *Id*. at 444-45. Professor Kao refused to

1    attend the evaluation, and ultimately the University of San Francisco terminated Professor

2    Kao's employment for failure to submit to the evaluation. *Id.* at 448.

3          Here, no University employee met with Dr. Ellis, and Dr. Ellis was told that the

4    only opportunity she would have to rebut the allegations against her would be during the

5    evaluation itself. Furthermore, the University did not consult with a doctor to determine

6    whether a fitness for duty evaluation should be required, prior to making its determination.

7    The Court agrees that the University of San Francisco's approach to fitness for duty

8    evaluations in *Kao* was perhaps the best practice as far as affording the employee the most

9    opportunity to interact with the process. However, Plaintiff does not provide – and the

10   Court has not found – authority for the proposition that the process in *Kao* is required by

11   law. Nowhere in the statutes, regulations, or cases does the Court find a requirement that

12   the complaints forming the basis for fitness for duty evaluations must be corroborated by a

13   formal investigation, or that a doctor must recommend the evaluation instead of a

14   University administrator. All that is required by the law is "significant evidence that could

15   cause a reasonable person to inquire as to whether an employee is still capable of

16   performing his job." *Sullivan*, 197 F.3d at 811.

17         Dr. Ellis's job responsibilities during the pertinent time period were threefold: (1)

18   she taught classes and supervised students off campus; (2) she advised students on their

19   theses, including reading drafts and providing feedback; and (3) as curator of the

20   University Museum, she was responsible for almost every aspect of the museum. Ellis

21   Decl. ¶¶ 4-7. Defendant argues that these job responsibilities – and Dr. Ellis's

22   "effectiveness as a professor" – were undermined by Dr. Ellis's behavior, and that the

23   fitness for duty evaluation was "the only effective and fair means for the University to

24   determine whether Dr. Ellis's work behavior was due to a medical condition." Def.'s Mot.

25   at 20. According to Defendant, the fitness for duty evaluation is an investigative tool to

26   determine whether a reasonable accommodation is needed. *Id.* at 19.

27         The Court disagrees with Defendant as to the proper function of the fitness for duty

28   examination. Ordering a fitness for duty evaluation is not merely an "investigative tool" in

the University's toolbox, to be wielded any time the University could use additional information about an employee. Rather, to protect employees from stigmatization and discrimination, the University must first have the requisite evidence that a business necessity warrants a properly tailored fitness for duty evaluation. Plaintiff is correct in stating that the important question to resolve in determining whether a business necessity exists is: "What did [Mr. Kauffman] know, and when did he know it?" Pl.'s Mot. at 14. The Court finds that the material facts surrounding this inquiry are in dispute.

The emails from students to Dr. Luby demonstrate that Dr. Ellis failed to provide necessary timely feedback on students' theses, which is an essential function of her job as a professor. *See* Ex. K to Gowe Decl. The emails from Dr. Luby to administration, between Dr. Luby and Ms. Fogarty (and from a student who witnessed an interaction between Dr. Ellis and Ms. Fogarty), and between Dr. Luby and Dr. Ellis, demonstrate that Dr. Ellis was engaging in unexpected outbursts and volatile interactions with her two coworkers, and that the behavior was seriously affecting her coworkers' ability to perform their jobs. *See* Ex. J to Gowe Decl.; Ex. A to Kauffman Decl. (Docket No. 47-4). While this behavior may be a mere annoyance or inconvenience in the context of a larger department, when considering the very small size of the Museum Studies Program, such interactions become far more precarious for Ms. Fogarty and Dr. Luby, when there are no other coworkers to serve as buffers, and no other avenues to take. Thus, it is clear to this Court that had Mr. Kauffman been aware of these emails and their contents, such evidence would cause a reasonable person in Mr. Kauffman's shoes to inquire whether Dr. Ellis was still capable of performing the essential functions of her position, even absent Mr. Kauffman engaging in his own investigation.

However, it is not clear to the Court whether Mr. Kauffman was indeed aware of the contents of these emails, or if the evidentiary basis for Dr. Luby's complaints were raised in enough depth during the May 19 meeting, such that Mr. Kauffman would have a sufficient basis for recommending a fitness for duty evaluation for Dr. Ellis. The facts are clear that Mr. Kauffman had made his decision at the end of the May 19 meeting, and that

8

he was not interested in any rebuttal evidence or having a meeting at all with Dr. Ellis in order to reconsider his decision. Exs. E & F to Lebowitz Decl.

Plaintiff contends that because Dr. Luby was the only attendee at the May 19 meeting who had any personal knowledge of Dr. Ellis's alleged conduct, and because Mr. Kauffman stated in his deposition that Dr. Luby provided the aforementioned emails to him "within a few days," the decision to order a fitness for duty evaluation was made solely based on Dr. Luby's uncorroborated allegations. Pl.'s Opp'n at 13 (Docket No. 55); Kauffman Depo. at 37. According to Plaintiff, "relying on a single source for allegations such as those being made by [Dr.] Luby is not reasonable." Pl.'s Opp'n at 13. In contrast, Defendant contends that Dr. Luby brought the emails to the May 19 meeting, and Mr. Kauffman states that he "relied on the information in the emails, in part, to make the recommendation and decision to require that Dr. Ellis attend a mental fitness-for-duty examination." Kauffman Decl. ¶ 2. Thus, according to Defendant, Mr. Kauffman considered the contents of the emails in making his decision.

The Court finds that what Mr. Kauffman knew at the time he made the decision to order the evaluation is a material fact, and it is genuinely in dispute.[3] Therefore, it is the duty of the finder of fact, who is able to assess and weigh the credibility of evidence and testimony, to determine what information Mr. Kauffman actually considered in recommending a fitness for duty evaluation for Dr. Ellis, and whether that information was reliable enough to constitute a business necessity.[4]

---

[3] The Court disagrees with Plaintiff's contention that Mr. Kauffman's declaration contradicts the prior sworn testimony of his deposition, thus violating the sham affidavit rule. Pl.'s Reply at 3 (Docket No. 50) (citing *Yeager v. Bowlin*, 693 F.3d 1076, 1080-82 (9th Cir. 2012)). The statements respond to entirely different questions, and may be harmonized. The deposition testimony states that Mr. Kauffman did not ask Dr. Luby to provide the emails until after the May 19 meeting had concluded. However, that does not foreclose the possibility that Dr. Luby brought the emails to the May 19 meeting and read them to the meetings' attendees, or referenced them in sufficient depth that they could provide the basis for Mr. Kauffman's decision, as stated in the declaration. Any further consideration would constitute an impermissible credibility assessment by the Court. *Yeager*, 693 F.3d at 1080.

[4] The Court refrains from considering the "notes" from the May 19 meeting as evidence of what Mr. Kauffman knew, as the notes are unreliable hearsay at best. *See* Ex.

9

### B. *Whether the examination was tailored to assess Dr. Ellis's ability to perform the essential functions of her job*

Even if the material facts as to business necessity were not in dispute, in order to grant summary judgment for either party, the Court would need to find no material facts in dispute as to job relatedness, as both requirements must be satisfied under the applicable laws. To be job related, the fitness for duty evaluation must be "tailored to assess the employee's ability to carry out the essential functions of the job [. . .]." 2 Cal. Code Regs. § 11065(k).

Defendant argues that because the examination did not happen, Plaintiff only speculates that the examination would not have been job related. Def.'s Mot. at 17 (citing *Sullivan*, 197 F.3d at 812). Defendant further argues that because Dr. Henderson had previously examined other University employees for the same purpose, he would have tailored the exam sufficiently. *Id*. at 18. Plaintiff argues that because the only "substantive communication" between the University and Dr. Henderson was a single phone call to schedule the fitness for duty evaluation, and the email only contained a copy of the Letter of Intent from Mr. Kauffman to Dr. Ellis, there was no way for the evaluation to be tailored to Dr. Ellis's essential job functions. Pl.'s Mot. at 19.

Plaintiff offers no authority to suggest that the tailoring of the evaluation must occur prior to the evaluation itself.[5] Furthermore, because the evaluation never happened, it is impossible for the Court to assess the tailoring of the evaluation. What the evidence does suggest is that Dr. Henderson often receives information prior to the evaluation, which he

---

B to Kauffman Decl. The Court further refrains from finding that Dr. Ellis's disclosure of certain diagnoses and medical procedures she experienced would have increased the likelihood that Mr. Kauffman's decision to order the evaluation was reasonable. Def.'s Mot. at 6, 9.; Def.'s Opp'n at 22 (Docket No. 48). Such an inference is precisely what this Court is cautioned against making, as it would result in workplace stigma for those with disabilities, and eviscerate the protections afforded to them by the applicable statutes.

[5] Plaintiff concedes that Plaintiff is not aware of any authority "addressing square-on an employer's obligation to ensure a medical examination is job related," but reiterates that it is the employer's burden to prove that the examination met the standard at this point. Pl.'s Mot. at 20.

1   reviews on the date of the evaluation, in order to determine for what precisely he is
2   evaluating the employee. Henderson Depo. at 35-36, Ex. G to Lebowitz Decl. at 35-36.
3   Here, some information was transmitted via email, but the contents of the email are
4   unknown because Dr. Henderson never opened it – and therefore did not have an
5   opportunity to, for example, request additional information – due to Dr. Ellis's refusal to
6   attend the evaluation. Henderson Depo. at 21, Ex. D to Gowe Decl. The evidence also
7   suggests that it was a common practice for the University to apprise Dr. Henderson of the
8   requirements of the job; however, it is unclear from the evidence at what point this
9   information transmission usually occurred, and whether the information provided to Dr.
10  Henderson as to other University faculty members would be the same as the information
11  needed to evaluate Dr. Ellis.[6]

12  Therefore, the Court, armed with the undisputed facts before it, cannot determine as
13  a matter of law whether Dr. Henderson's evaluation of Dr. Ellis would have been tailored
14  to her essential job functions. Noting the near impossibility of deciding as a matter of law
15  whether or not an evaluation that never happened was sufficiently tailored, the Court finds
16  that material facts are in dispute as to the job relatedness requirement. Thus, neither party
17  has met their burden on this factor to warrant granting summary judgment.

19  ///
20  ///
21  ///
22  ///
23  ///

---

[6] As with the discussion above regarding the business necessity requirement, the Court does not find that the purported discrepancies between Dr. Henderson's deposition and declaration constitutes a "sham affidavit." Dr. Henderson stated in his deposition that, specifically with regard to Dr. Ellis's evaluation, he had not learned from any source what Dr. Ellis's job duties were. Henderson Depo. at 32. It is the Court's opinion that this assertion is not contradicted by Dr. Henderson's affidavit, which states that prior to "the first faculty fitness-for-duty evaluation" he spoke to Mr. Kauffman about the general job duties of University faculty. Henderson Decl. ¶ 3 (Docket No. 47-6).

**CONCLUSION**

For the reasons set forth above, the Court finds that there are disputes as to material facts which preclude the Court from granting summary judgment to either party on the legality of the fitness for duty evaluation. Accordingly, both parties' motions for partial summary judgment are hereby DENIED.

**IT IS SO ORDERED.**

Dated: 08/11/16 _____
THELTON E. HENDERSON
United States District Judge